GULF, COLORADO & SANTA FE RAILWAY COMPANY v. BLAKENEY-STEVENS-JACKSON COMPANY.

Decided January 9, 1908.

**1.—Railroads—Fire Caused by Locomotive—Evidence.**

In a suit against a railroad company for the value of property destroyed by fire alleged to have been caused by sparks from a locomotive 195 feet distant, circumstantial evidence considered, and held sufficient to support a finding and judgment against the railroad.

**2.—Same—Same.**

Evidence that a fire started immediately or very soon after the passing of a locomotive; that there was no fire on or in the vicinity of the premises before that time; and that there was no other apparent cause for the fire, is sufficient to warrant the inference of fact that the fire was caused by the locomotive.

Appeal from the County Court of Fannin County. Tried below before Hon. H. A Cunningham.

*J. W. Terry* and *A. H. Culwell,* for appellant.—Even if it had been shown that this fire originated from a spark or cinder thrown from one of appellant's engines, yet appellee would not be entitled to recover, for the reason that the evidence affirmatively shows

that the engine in question was equipped with the latest and most approved spark arrester in use; that careful and prudent inspections of this engine and spark arrester had been made; that same was in good condition; that it was being operated by a careful and prudent engineer, who was handling same in a careful and prudent manner. and these conditions existing, appellee is not entitled to recover. Ft. Worth & D. C. Ry. v. Hogsett, 67 Texas, 688; Houston & T. C. Ry. Co. v. McDonough, 1 Texas Civ. App., 354; Texas & P. Ry. Co. v. Medaris, 64 Texas, 93.

This judgment is erroneous and ought to be set aside, because the uncontradicted evidence shows that engine No. 201, which the court finds is the one which set fire to this property, was equipped with the latest and most approved spark arrester in use; that frequent inspections of this engine had been made; that the engineer in charge thereof was competent and was operating said engine with due care and caution at the time and place of this fire. St. Louis S. W. Ry. Co. v. Knight, 20 Texas Civ. App., 477; St. Louis S. W. Ry. Co. v. Gentry, 74 S. W., 607; Allibone v. Ry. Co., 2 Texas Civ. App., 54; Gulf, C. & S. F. Ry. Co. v. Reagan, 32 S. W., 846; Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 461.

*McGrady & McMahon,* for appellee, cited: Big River L. Co. v. St. Louis, I. M. & S. Ry., 101 S. W., 636; St. Louis, I. M. & S. Ry. v. Coombes, 88 S. W., 595; St. Louis, I. M. & S. Ry. v. Dawson, 92 S. W., 27; Missouri P. Ry. v. Donaldson, 73 Texas, 124; Levine v. Ry., 87 Texas, 437; Ross v. St. Louis S. W. Ry., 103 S. W., 708; Scott v. Ry., 93 Texas, 625; Railway v. Carter, 95 Texas, 461; Galveston, H. & S. A. Ry. v. Murray, 99 S. W., 144.

LEVY, ASSOCIATE JUSTICE.—Appellee brought this suit against the railroad company to recover the value of certain personal property which was burned while located in a barn just outside the right of way of the company, alleged to have been destroyed by reason of sparks or live cinders that negligently escaped from one of the engines of the appellant. The case was tried before the court without a jury, and verdict and judgment were rendered in favor of the appellee for the value of the goods burned, which the appellant seeks to have reversed for errors assigned upon the findings of the court.

The appellant complains in its first and second assignments of error, that there is no evidence sufficient to support the findings by the court that sparks or live cinders escaped from the engine of appellant, nor that the employes operating the engine were negligent in handling the engine at the time of the alleged fire. The finding of the trial court which the appellant complains of is as follows: "On February 12, 1904, plaintiff owned and had stored in a barn and lot on which it was situated in the town of Ladonia, owned by C. S. McFarland, certain personal property as described in its petition; and on that day fire, sparks and live cinders were communicated to said barn and its contents at about 11:35 a. m., which fire escaped from one of defendant's locomotive engines, to wit,

engine No. 201, while said engine was being operated on the defendant's railroad track in said town in defendant's business by its employes near said barn, to wit, about 195 feet therefrom; and the fire so escaping was carried by the wind to said barn and contents, and such fire consumed and destroyed said barn and its contents; and that such burning and escape of fire from the engine was proximately caused by the negligence of the defendant in these things, to wit: 1st, the employes operating said engine were negligent and did not handle such engine with ordinary care to prevent the escape of sparks and live cinders, but they carelessly and unnecessarily caused said engine to give off loud exhausts, thereby throwing more fire and throwing fire further than it would have done if the engine had been operated with ordinary care on the occasion in question; and if the engine had been operated with ordinary care it would not have fired said barn and contents; 2d, that the spark arrester on said engine was not in good repair for preventing the escape of fire on the occasion in question, but that defendant had used ordinary care to have the same in good repair."

Looking to the statement of facts in this case, there does not appear that direct proof was made of the fact that sparks or live cinders escaped from the engine and burned the barn, though circumstantial evidence was resorted to for the purpose; and that on this character of evidence the trial judge found that the fire was set out by sparks from the appellant's engine and through the negligence of appellant. To determine the correctness of the court's findings, we take the weightiest facts in the record as testified to by the several witnesses for the appellee.

The barn which was burned and which contained the property sued for was situated a little west of north from the appellant's depot in the town of Ladonia, 195 feet from the defendant's main track. It had a shingle roof, the comb extending east and west, practically parallel with the appellant's track. The roof was rather old with holes in it, some an inch wide and several inches long. The loft next to the roof was filled with dry hay, some loose and some baled. The weather was dry and the wind blowing hard from the direction of the depot towards the barn. The lower part of the barn contained live stock, harness, implements and agricultural products. There were sheds to the barn, on either side. From five to fifteen minutes before the fire broke out the witness Jake Brown entered the east door of the barn and led his cow out around to the west end of the barn, and watered her at a trough; then took the cow to a grass lot 150 feet west and turned her in, and came back to the sidewalk on the street, which was about 50 feet east of the barn, and was standing there when the fire alarm was first given. The witness Wright was the first to give the fire alarm. The witness Brown then looked and saw the barn burning in the south end of the roof of the barn; smoke was coming out through this roof, and possibly a little blaze; other parts of the barn were not then burning. The material was combustible and the fire spread rapidly, consuming the barn and its contents. No fire was in the barn when the witness Brown was in there; he neither saw nor

smelled any fire or smoke. No one was seen about the barn except Brown when he was there, nor was anybody seen there after he was, though the barn was in plain view of several persons near by who testified that no one was there. At the time Brown was there he had no fire about him. So far as the record shows, the only other person except Brown who had been in or around the barn was the delivery boy of the appellee, Covington, who was there early in the morning. It was proven that no other person had any occasion or business in or around the barn, and that Brown was only about the west end of the barn; and when there the appellant's engine, shown to be No. 201, pulling an extra freight, pulled in from the direction of Dallas, Texas. The engine stopped about the west end of the depot and cut loose two cars, started up very suddenly and rapidly in making a quick switch, doing at the time very hard and unusually loud puffing, which attracted the attention of both Brown and Wright and the other witnesses who lived in Ladonia and testified they were accustomed to trains. The appellee's witnesses testified that from five to fifteen minutes after this engine pulled in and after it did this hard puffing the fire broke out. It was proven that there were no furnaces, fires, chimneys or other means that could have fired the barn other than the appellant's engine. The nearest place having a fire was the stove in the appellants' depot, 180 feet distant. The engine came into the depot at about 11:35 a. m., and the fire was discovered by the witnesses some minutes before 12, variously estimated to be, as stated, from five to fifteen minutes after the quick switching was done. It was shown that at other times, within a few weeks of this fire, live sparks thrown from the defendant's engine had been seen to travel, at night, a greater distance than from the barn to the depot, with the wind not so high. The appellant's engine was a coal burner. The appellant offered evidence showing that the engine was equipped with the most approved spark arrester in use, and that the engine was examined by competent persons on February 2, 7, 9 and 11, and the spark arrester, as well as all other parts of the engine, was in good condition on each of the days examined. That the engine was not working steam when it approached the depot, but drifted into town, gradually slowing down to a stop. That no sparks were escaping at the time or prior to the stopping. That in a minute or two after arrival at the depot of this engine the barn was discovered, by the train crew, to be on fire; the conductor saying that he went out and looked at the fire. That the engine was not throwing sparks or cinders as it went into town. That the engineer was competent and cautious and handled the engine carefully. That the engine did no hard puffing or made no loud noise at Ladonia. That this train remained fifteen minutes at Ladonia, arriving at 11:35 and leaving at 11:50 a. m. It was shown on cross-examination of these witnesses that they had orders to meet a freight train at Ladonia which was about due; that this engine switched two cars and made an effort to get the train on a passing track before that train would arrive. The witness Daniel said it would take a hard wind to have carried sparks from this

engine to the barn; that an engine throws sparks further when doing hard puffing than when not puffing; that this was the first trip the engineer ever made with this engine; that all coal burning engines throw sparks and cinders more or less while working, the amount of cinders being governed by the heaviness of the work; that a spark arrester in good repair will not throw sparks as large as a pea 200 feet.

It appears from this evidence that there is a conflict in the testimony as to whether the barn was on fire before engine No. 201 pulled in and stopped, and as to whether this engine did hard puffing about the depot. The trial court decided the conflict against appellant, and we assume the correctness of the finding.

We bear in mind, in passing upon the sufficiency of these facts offered, that every case must and will depend more or less upon the collection of circumstances disclosed by the evidence of the given case. It is laid down as a rule that evidence that the fire started up (1) immediately, or very soon after the passing of the train, and (2) there was no fire on the premises or vicinity of the premises before, and (3) there was no other apparent cause for a fire, is sufficient to warrant an inference of fact that the fire was emitted from the railway company's passing engine. Thompson's Com. on Law of Neg., vol. 2, sec. 2368, p. 909 (2 ed.); 13 Am. & Eng. Ency., p. 513. In Union Pac. Ry. v. DeBusk, 20 Pac., 753, it was said by the court in passing on like proof, "From the nature and circumstances of such cases considerable latitude must be allowed to the introduction of testimony and in the drawing of inferences as to the origin of the fire." This rule obtains as well where the fire starts a reasonable distance from and beyond the track. Greenfield v. Chicago & N. W. Ry., 49 N. W., 95; Dean v. Chicago, M. & St. P. Ry., 12 Am. St. Rep., 659. In the case of Karson v. Milwaukee & St. P. Ry., 11 N. W., 122, there was no direct proof that the hay was ignited by an engine. It was shown there was quite a stiff breeze and the fire started a few minutes after the train passed, and there was no other fire nor any other person in the vicinity at the time, or other probable explanation of the fire than that of the passing engine. While in the case of International & G. N. Ry. v. Morgan, 67 S. W., 425, the evidence showed that there was other probable explanation of the fire than that of the passing engine, and a recovery was denied in this case.

In the light of the rule, and looking to the record in this case, there was sufficient facts established as to the origin of the fire being the appellant's passing engine. The established rule in this State is, where it has been shown by the plaintiff that fire was set out by the railway engine then the burden is upon the railway company to show that there was in fact no negligence on its part causing the fire. International & G. N. Ry. v. Timmerman, 61 Texas, 660; and the rule reaffirmed in 5 S. W., 823, 9 S. W., 442, 14 S. W., 276, 28 S. W., 273, 60 S. W., 797. Having its engines properly constructed, in good order, and properly equipped with suitable contrivances generally approved and used as the best means of preventing the escape of sparks or live cinders, and rea-

sonable care and prudence exercised at the time in operating the engine, might be said in a given case, to exclude the legal presumption of negligence by the mere fact that a fire has been occasioned by sparks from its engines. Such a conclusion, in a proper case on that kind of proof, could be reached because the railway company has a licensed right, as a means of public utility, to use fire to operate its engines; and upon the doctrine of law, that a party is not answerable in damages for the reasonable exercise of a right. However, it is a general ruling that where there is proof on the part of the plaintiff that his property was destroyed by fire originating from sparks from the engine, and on the other hand there is a state of proof by the railway company of such proper equipment and construction of the engine, and proper handling, tending to establish against the existence of negligence, the court must determine the question of negligence, in every given case, upon the whole evidence. As said in the opinion of the Supreme Court in the case of Texas & P. Ry. v. Levine, 87 Texas, 437, "Consequently the question as to negligence or not becomes a question of fact to be determined upon the evidence. The credibility of the witnesses and the weight to be given to their evidence are matters to be decided by the jury." Yet in passing upon the whole evidence of the case, it must be borne in mind that these rules are rules of evidence and not of liability and that the general burden of proof to make out a case of negligence rests upon the plaintiff, and he can not sustain his suit without there is proof of negligence. Daly v. Chicago, M. & St. P. Ry., 45 N. W., 611; Louisville & N. Ry. v. Reese, 7 Am. St. Rep., 66; Gulf, C. & S. F. Ry. v. Benson, 69 Texas, 407; Galveston, H. & S. A. Ry. v. Horne, 69 Texas, 643; Missouri, K. & T. Ry. v. Stafford, 31 S. W., 319.

In passing upon the whole evidence of the case to determine whether there is any evidence to support the finding of negligence by the trial court, we bear in mind the rule laid down in the case of Greenfield v. Chicago & N. W. Ry., 49 N. W., 96, which is a kindred case, "negligence being presumptively established, has for its support every fact by which it might have been established, upon proof; or, in other words, a party disproving negligence must negative every fact the proof of which would justify a finding of negligence."

Looking to the record, we find these salient facts: That the fire started 195 feet from the track, and that a spark arrester in good repair will not throw sparks as large as a pea 200 feet; that sparks from the defendant's engines within a few weeks before had thrown sparks further than this distance with less wind; that a heavy wind was blowing at the time; quick switching and loud puffing of the engine; an engine throws sparks further when doing loud puffing. These facts are sufficient to warrant the court's finding of negligent operation. Texas & P. Ry. v. Rice, 24 Texas Civ. App., 374; Texarkana & F. S. Ry. v. O'Kelleher, 21 Texas Civ. App., 96; St. Louis, I. M. & S. Ry. v. Coombs, 88 S. W., 595; Scott v. Texas & P. Ry. Co., 93 Texas, 625. As bearing upon negligence, the fact that fire was thrown 160 feet from the

track makes a conflict with evidence of proper equipment and proper care in operation. Hagen v. Chicago, D. & C. G. T. J. Ry., 49 N. W., 510. That the sparks were thrown 45 feet to the cotton tends to show that it was caused either by defective spark arrester or by careless operation of the engine. Railway v. Levine, 29 S. W., 514.

The case is ordered affirmed.

*Affirmed.*