## STASKEY et al. v. SMITH. (No. 796.)

(Court of Civil Appeals of Texas. Beaumont. April 22, 1922. Rehearing Denied May 10, 1922.)

1. **Brokers ⬳49(3)—Broker held authorized to bind seller to terms of sale made.**

A broker employed to secure a purchaser for a stock of merchandise "at invoice price plus 10 per cent." was not authorized to bind the owner to sell at invoice price plus 10 per cent., "deducting any depreciation on account of damages, wear, and tear," or to submit disputed questions to arbitration.

2. **Brokers ⬳82(4)—Broker pleading bill of sale as compliance with contract bound by its terms.**

Where, in an action for commissions, the broker pleaded a bill of sale as a compliance by him with his obligations under his contract with the owner, he was bound by its terms.

3. **Evidence ⬳213(1)—Evidence held to show offer of compromise not admission of liability in action for commission.**

In an action for commissions for the sale of merchandise, *held* error to admit evidence showing an offer of compromise and settlement not an admission of liability by defendant.

Appeal from District Court, Robertson County; W. C. Davis, Judge.

Action by J. A. Smith against J. J. Staskey and another. From judgment for plaintiff, defendants appeal. Reversed and remanded for new trial.

J. Felton Lane, of Hearne, and Joe Reid, of Franklin, for appellants.

H. A. Bush, of Franklin, for appellee.

WALKER, J. This suit was brought by appellee against appellants on the following contract, which he pleaded as the basis for his recovery herein, to wit:

"Bremond, Texas, February 2, 1920.

"This memorandum of an agreement made and entered into by and between J. J. Staskey and Alex Staskey, composing the firm of Bremond Cash Store, of Bremond, Texas, and John H. Smith of Bremond, Texas, witnesseth:

"The said J. J. and Alex Staskey, in consideration of the services of the said John H. Smith in the sale of our stock of merchandise at Bremond, Texas, agree to pay to said John H. Smith the sum of two thousand dollars in cash at the consummation of said sale of said stock of merchandise directly or indirectly.

"We also agree that we will sell said stock of merchandise at invoice price plus 10 per cent. and the said John H. Smith is hereby authorized to offer for sale said stock of merchandise at said price for cash.

"Witness our hands at Bremond, Texas, this the 2d day of February, 1920.

"This agreement expires 1st day of May, 1920.

"[Signed]  Alex X Staskey,
 his
 mark
"J. J. Staskey,
  "Parties of the First Part.
"John H. Smith,
  "Party of the Second Part."

He alleged that, in full compliance by him with the conditions of the contract, he procured purchasers for the stock of goods, who were able, ready, and willing to take the same on the conditions of the contract, and that he executed a bill of sale to the purchasers. He did not make the bill of sale a part of his petition, but pleaded that bill of sale was executed under the authority given him by his contract with appellants; that appellants refused to deliver the stock of goods, and refused to pay him his commission of two thousand dollars.

The following is a copy of the bill of sale executed by him in the sale of the stock of goods:

"The State of Texas, County of Robertson.

"This agreement made and entered into this day by and between C. M. Campbell and A. Sowma, buyers, and the Bremond Cash Store, composed of J. J. and Alex Staskey, acting herein by and through their duly authorized agent, John H. Smith, seller, both of the county of Robertson and state of Texas, witnesseth:

"(1) That the said seller shall sell to the said buyer, and the said buyer shall buy from the said seller, all of that certain stock of goods, wares and merchandise to the said seller, and now situated in the storeroom on main street in the town of Bremond, Texas, together with all the furniture and fixtures therein, belonging to the said seller.

"(2) That upon the execution and delivery of this contract. properly signed and executed before some officer authorized to take acknowledgments under the laws of Texas, and the payment of the earnest money hereinafter mentioned, the said store shall be closed temporarily, and an inventory taken immediately, and delivered to said buyer, at the invoice cost plus 10 per cent., without including transportation charges or expenses, deducting any depreciation, on account of damages, wear and tear.

"(3) The said goods, wares and merchandise and furniture and fixtures shall be inventoried at the invoice plus 10 per cent. by the seller and buyer, and if they cannot agree upon the prices for same, original or duplicate invoices of such goods shall be produced by the seller to the buyer, to determine the invoice cost, and the amount of the deductions for damages, wear and tear, then these values shall be fixed by an arbitration board, consisting of —— and —— and ——, or any two of them, whose decision shall be final and binding upon the buyer and seller.

"(4) Ten days allowed to complete said inventories, upon which date all of said property shall be thereupon delivered by the seller to the buyer.

"(5) That the said buyer, in consideration of the premises, shall upon the execution of this contract, deposit in escrow in the First State Bank of Bremond, the sum of five thousand dollars, as earnest money to bind the trade, said sum to be returned to said buyer, in case said seller fails to make good title to said property, and upon the consummation of said deal and the tender of the seller to said buyer, of his certain bill of sale to said property, showing that the seller has complied with all the requirements and conditions of the Bulk Sales Laws of the state of Texas, and that they will furnish to said buyers a full and complete list of all creditors of said Bremond Cash Store, together with the amounts due said creditors, that said creditors shall be immediately paid in full such amounts as may be due them, and that the said total amount shown to be due by said sellers shall be deposited in escrow in said First State Bank of Bremond, Texas, until all creditors of said Bremond Cash Store shall give a release of their claims against said Bremond Cash Store or the said individual members thereof, the said buyer, shall pay to said seller the total amount of said invoice plus 10 per cent. in cash and said payment shall be accepted in full payment for said property.

"(6) All the stipulations, agreements and conditions contained in this contract are to apply to and bind the heirs, executors and administrators of the respective parties hereto, and in case of failure, said parties bind themselves, each to the other, in the sum of one thousand ($1,000) dollars, as fixed and settled damages, to be paid by the failing party.

"Witness our hands, this the 23d day of February, 1920.  ——————, Seller.
  " ——————, Seller.
"[Signed]  By John H. Smith, Agent.
  "C. M. Campbell, Buyer.
  "A. Sowma, Buyer.

"The State of Texas, County of Robertson.

"Before me, S. M. Peters, a notary public in and for Robertson county, Texas, on this day personally appeared C. M. Campbell and A. Sowma and John H. Smith, each known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged

to me that they executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this 23d day of February, A. D. 1920.

"[Signed] S. M. Peters,
"Notary Public, Robertson County,
"[L. S.]                                        Texas."

The trial was to a jury on the following issues:

"(1) Did the plaintiff, John H. Smith, secure purchasers for the stock of goods belonging to defendants upon the terms and conditions stated in the written agreement sued upon; that is, at invoice price plus 10 per cent.? Answer 'Yes' or 'No.' (Answer: Yes.)

"(2) Were the said Sowma and Campbell able, willing, and ready to purchase all of said stock of goods, including new, shelf-worn and old goods, on the basis of invoice price plus 10 per cent. from defendants? Answer 'Yes' or 'No.' (Answer: Yes.)

"(3) Was the plaintiff, John H. Smith, the efficient and procuring cause of the offer and agreement, if any, to buy the said stock of goods by the said Campbell and Sowma, from defendants? Answer: 'Yes' or 'No.' (Answer: Yes.)

"(4) Did the written agreement of February 2, 1920, embody all of the agreement and understanding of the contract of employment of agency, and of the terms and conditions upon the defendants, then and there authorized John H. Smith, as their agent to sell said stock of goods? Answer 'Yes' or 'No.' (Answer: Yes.)

"(5) Was it then and there understood and agreed between defendants and plaintiff, in the verbal agreement relating to his employment and direction as agent, that all matters in relation to a trade between any prospective purchaser and the said seller, other than the one matter of price of invoice plus 10 per cent. as embodied in said contract, were subject to agreement between defendants and such prospective purchaser, and to be satisfactory to both said purchaser and defendants before the trade would be consummated? Answer 'Yes' or 'No.' (Answer: ———.)

"(6) Was it understood and agreed between plaintiff and defendants that the price of all goods for which they did not have invoices should be the invoice price plus 10 per cent. as shown on said goods? Answer 'Yes' or 'No.' (Answer: No.)"

On the answers returned, judgment was entered for appellee.

Appellee has made no appearance in this court, either by oral argument or written brief.

[1, 2] Appellants' assignments that the answers of the jury to questions 1 and 2 were not supported by the evidence must be sustained. Appellee rested his cause of action on a written contract between him and appellants. He did not seek by his pleading to enlarge its terms, nor to include anything in his contract with appellants, except such matters as were expressed in writing. In answer to the fourth question, the jury found that the written contract embodied all the agreement and understanding be-

tween appellants and appellee. By the terms of that contract he was to secure a purchaser, who would take the stock of goods "at invoice plus 10 per cent."

In answering question No. 1, the jury found that he, in fact, did "secure a purchaser for the stock of goods belonging to defendants upon the terms and conditions stated in the written agreement sued upon; that is at invoice price plus 10 per cent." A reference to the bill of sale executed by appellee to Campbell and Sowma shows that such answer was not true. They contracted to take the stock at invoice price plus 10 per cent., "deducting any depreciation, on account of damages, wear, and tear." Under his written contract with appellants, appellee had no authority to bind them to any such stipulation. Further, appellee had no authority to bind appellants to a contract submitting disputed questions to arbitration. Appellee, having specially pleaded, the bill of sale as a compliance by him with his obligations under his contract with appellants, was bound by its terms. Under his pleading, the jury should have answered question No. 1 "No."

[3] In answer to question No. 2, the jury found that "Sowma and Campbell were able, willing, and ready to purchase all of said stock of goods, including new, shelf-worn, and old goods, on the basis of invoice price plus 10 per cent." Such answer was in direct contradiction of the terms of the bill of sale executed by appellee to Sowma and Campbell, especially in the particulars just above noted.

The following bill of exceptions shows error:

"Be it remembered that on the trial of the above styled and numbered cause, in this court, on the 18th day of January, A. D. 1921, the following proceedings were had:

"On cross-examination of defendant J. J. Stasky;

"Q. Didn't you go to the First State bank with John Smith for the purpose of paying him his commission of $2,000? A. No, sir.

"Q. What did you go with him for? A. I was going to pay him $1,000 commission—not commission—; I mean in about three days afterwards—to not go in the court, to get the thing settled, but he wanted full amount, $2,000, and I told him I couldn't pay it.

"Q. That was three days after what? A. After he claimed he sold us out.

"Q. Three days after Miller Campbell had been there—was it three days after Miller and Albert Sowma and John Smith came down to your store?

"Mr. Lane: I want to object to the entire interrogation of the witness about an effort to compromise. The law favors efforts of parties to compromise their differences, and they are held as confidential; the law shields the efforts of parties in an effort to compromise, and they are protected from disclosure.

"Mr. Moorehead: I am not asking about any compromise.

"Mr. Lane: I object to any further interrogation on compromise.

"The Court: I sustain the objection as to efforts to compromise.

"Mr. Moorehead: I am asking as to a straight commission.

"Mr. Lane: I reserve my bill on the ground it brings out the efforts of the parties to compromise which did not succeed.

"Q. You say in about three days after Miller Campbell, Albert Sowma, and John Smith had been in your store—was that the time that you went to the bank with John Smith? A. No; the day before.

"Q. The day before? A. Yes.

"Q. The day before which? A. Before they came there, and—no; I don't remember just what day; I couldn't remember that; it probably might have been that same day.

"Q. At any rate, you did go to the bank with him, didn't you, for the purpose of paying his commission in this case? A. No, sir.

"Q. After you had found out there was a profit to you and your brother by holding this stock and not selling and carrying out the trade? A. No, sir.

"Q. You never have paid Mr. Smith his commission of $2,000? A. We didn't owe him any $2,000.

"Q. You don't answer the question. A. No. sir; we did not pay it.

"Q. You say you did offer him $1,000?

"Mr. Lane: We object to that question. I object about offering him $1,000.

"The Court: I sustain the objection. He states he didn't go down there for the purpose of paying a commission. The effort to compromise is what I sustain, if any effort was made.

"Mr. Moorehead: Plaintiff excepts as to that; this is cross-examination of one of the parties to the suit, and I am asking as to an admission. It is a straight suit for a commission, the question of which elicits the answer. I asked him if he didn't admit he owed him, and his answer was, not $2,000, but $1,000.

"The Court: I don't remember that statement.

"Mr. Moorehead: I want to get that part clear what he meant by the $1,000 offer.

"(Here the court reporter read the answer of the witness heretofore given.)

"Mr. Lane: I ask the court now that it be excluded as an effort to compromise, brought out over our objection, and that the jury be instructed that they will not consider the testimony of any effort of the parties to make compromise or as to keeping the case out of court.

"The Court: That is a statement of the party at interest. I overrule the objection.

"Defendants except.

"That notwithstanding the said objections, as above set forth, and upon the grounds above set forth, the court overruled the said objection, and allowed and required said defendant, as a witness, to testify that he had offered to pay said John Smith, plaintiff, the sum of $1,000, and the court refused to withdraw same from the jury, and refused to instruct them, as requested by defendant, not to consider same, and said testimony remained before the said jury and was considered by them, to which ac-

tion of the court the defendant did then and there except in open court, and here now tender this their bill of exception, and asks that the same be examined and approved and made a part of the record in this case.

                              "J. Felton Lane,
                              "Joe E. Reid,
                "Attorneys for the Defendants.
"Presented and agreed to by:
                              "H. S. Moorehead,
                      "Attorney for the Plaintiff.
"This bill of exceptions examined, found correct, and signed and approved and ordered filed as a part of the record in this case.
                              "W. C. Davis,
          "Judge 85th Judicial District of Texas."

It is clear from this bill that appellants have done nothing more than make a compromise offer of settlement. The bill itself excludes the inference that appellants admitted any liability to appellee, but were only offering to pay $1,000 to keep the case out of court. Railway Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; St. Louis Southwestern Ry. Co. v. Kern (Tex. Civ. App.) 100 S. W. 972.

For the errors discussed, this cause is reversed and remanded for a new trial.