OVERTON/ J.
Mrs. Yetta Abrams Bauer was the owner of a store building, a residence, and a garage in the village of Walker. She leased the store to the Walker Mercantile Company, one of the plaintiffs in these consolidated cases; and she and her husband, Lazard Bauer, the two remaining plaintiffs, occupied the residence and used the garage. The store, the residence, and the garage so adjoined each other as to make virtually one building.
On March 14, 1920, at about 4:30 in the afternoon, this property, including its contents, was destroyed by fire. Plaintiffs attribute its loss to the negligence of the Yazoo & Mississippi Valley Railroad Company, the defendant in each of these suits. They contend that a locomotive operated by defendant on the tracks of the Baton Rouge, Hammond & Eastern Railroad Company, of which tracks defendant was the lessee, emitted sparks, cinders, and coals, which fell on said property, and set it afire.
The Walker Mercantile Company sues for damages, amounting to $9,967.64, the value of the merchandise and fixtures belonging to it, and contained in the store building, at the time of the fire, with legal interest on said amount from judicial demand until paid. Mrs. Bauer sues for $8,191.11, the value of the buildings destroyed by the fire, and for certain personal property contained in the residence, and owned by her, with legal interest on the amount sued for, from judicial demand until paid. Lazard Bauer sues 'for $2,417.02, the value of the furniture and other property in the residence, at the time of the fire, owned by the community of acquets and gains- existing between him and his wife, with legal interest on said sum from judicial demand until paid. In the first suit $2,000 is for the use and benefit of certain insurance companies that paid policies on the property destroyed, and in the second suit $500 is for such use and benefit.
The question to be determined is whether the evidence show's that the property was destroyed by one of the defendant’s locomotives by the emission of sparks and cinders. It may be said at the outset that the evidence negatives any idea that one of the plaintiffs set the property afire. There is not room for the slightest suspicion in that respect. The loss was a heavy one to plaintiffs.
The buildings were built in' a low place which was marshy, and subject to overflow, from a small creek, known as Dumpling creek, that touched the property. In order to make the property habitable, Mrs. Bauer had the lot filled with sawdust, and protected it from overflow from the creek. The parlor, or library, was the nearest part of the residence to the railroad. This was 59 feet distant. The residence was the nearest of the buildings to the track. There was no fireplace, flue, or stove in the parlor. The family had been using oil stoves in the house, to some extent, for heating purposes. These stoves, however, were removed to the store 10 days before the fire, with the exception of one for cooking purposes, which was in the kitchen. The family consisted of Mr. and Mrs. Bauer and a baby. They occupied an ell of the house, consisting of a bedroom, *1055 kitchen, and wash shed, which touched the rear of the store and the rear of a reserve room in the residence. This wing formed one' side of a right angle. The bathroom and the library formed the other side. The wing was not directly connected with the parlor. The family had not used the parlor that day. They had a cook and a nurse, but the latter was not present at the time of the fire. The former left at 1 o’clock that afternoon. Mrs. Bauer cooked a light supper for her husband at about 4 o’clock, on the day of the fire, on the oil stove in the kitchen; but the fire did. not originate in that part of the house.
Two passenger trains operated by defendant passed the Bauer residence within a few minutes of each other near the hour of 3:35 p. m. on the day of the fire. As the train pulled by engine No. 28 departed it was observed that the engine pulling it emitted cinders, though it does not appear, by any direct evidence, that any of the cinders were alive when they reached the ground. The plaintiffs contend, however, that this appears circumstantially, and point to the fact that, soon after the train pulled by engine No. 28 passed, it was observed in two places, near Walker, that the grass was burning near the t track, and also that several hundred feet from the Bauer residence an old log was observed to be on fire before it was noticed that the residence was burning. On the other hand, the defendant has offered evidence to show that the locomotives used in operating the two trains which passed the Bauer property that afternoon were properly equipped with spark arresters. An examination was made shortly after the fire, and those who made it testify that the locomotives were so equipped.
One of the first to see the fire was a lady passing the premises. She noticed black smoke coming out of the parlor. Knowing that the parlor was not provided with a chimnejf, she looked to see what was the cause of the smoke, and saw a small flame under that part of the house. This blaze, at the time, covered a space about four feet in length, and something over three feet in width. She, at once, gave the alarm by calling to the inmates of the house; and within a minute thereafter she saw a flame gush, as she described it, from under the house, though not from the' ground, and run up the back wall of the parlor. At approximately the same time, others in the immediate vicinity, saw smoke coming out of the parlor, and immediately afterwards saw flames bursting from within into view. The Bauers, at that time, were in the wing of the house in which was located the kitchen and also the bedroom which they occupied, and knew nothing of the fire until Mrs. Bauer, thinking that she heard screams, looked out of the window, and saw that the house was burning.
On the day of the fire, and on the preceding day the weather was fair; but on the third day prior to the fire it rained, and the weather before that was unusually wet It, however, appears that on the day of the fire the sawdust in the yard was dry on the surface ; and since the lot was filled to a higher grade under the house than in the yard, ánd since the sawdust under the house was protected from the weather, the' conclusion is irresistible that the sawdust under the house was dry, at least to a reasonable depth.
Evidence, as stated, was offered to show that the two locomotives in question were properly equipped with spark arresters, and therefore that they did not emit cinders of such size as could set property afire, some 59 feet distant. We tliink, however, that this evidence must be'held as failing of its purpose, when it appears well established that, shortly after the two trains passed, the three fires mentioned were seen along the side of the track and on the north side of it. *1057 The wind was from the south when the trains passed. The evidence indicates that these fires were not burning prior to the passing of the trains, nor is there anything tending to show that any one except the railroad company is responsible for them. The fire that was burning .the log was evidently lighted by cinders falling in trash by its side.
That which makes the three fires a strong circumstance against the railroad company is not only their number, within a distance of two miles, but the fact that they were all on the same side of the track, and toward which the wind was blowing, and occurred soon after the passing of the trains. Under the circumstances, it seems to us that the reasonable and proper conclusion is that the three fires mentioned, which do not include the one that burned the property, were caused by cinders emitted through a defective spark arrester in one of the two locomotives. It is immaterial which of the two caused the fires, though we are inclined, from the evidence, to think that it was No. 28.
Being satisfied, therefore, that one of the engines had a defective spark arrester, the question arises: Did the engine also set the Bauer property afire? This property, it will be recalled, was on the same side of the track as were the three fires considered in the preceding paragraph. We think that the engine did, and did so by emitting live cinders, one or more of which were blown by the wind into the sawdust under the house. In so holding, we are not unmindful of the fact that sawdust does not burn readily. This sawdust, however, was dry to a sufficient depth to enable it to burn. When dry, it may burn. That it did catch afire, in this instance, we are fully justified in concluding from the evidence of the lady who saw the blaze. There is not sufficient reason to disregard her evidence. It is true, when she saw it, it did not reach halfway to the floor, which was approximately 15 inches from the sawdust; but it does not follow that, before she saw it, it had not attained that height, worked its way through, and set the inside of the parlor afire; and this we think it did. When she saw the blaze it is evident that the parlor was afire inside. When the sawdust burned to a depth at which it was well packed, or damp, doubtless the fire began to die.
We do not think that the blaze underneath the house was the result of a fire originating in the parlor, which had made its way through the floor. The evidence does not so indicate.
In Lemann Co. v. Texas & Pacific Ry. Co., 128 La. 1089, 55 South. 684, it was said:
“It is laid down as a rule that evidence that the fire started up (1) immediately or very soon after the passing of the train, (2) that there was no fire on the premises or vicinity of the premises before, and (3) that there was no apparent cause for the fire is sufficient to warrant an inference of fact that the fire was emitted from the railway company’s passing engine. Union Pacific Ry. Co. v. De Busk, 12 Colo. 294, 20 Pac. 752, 3 L. R. A. 350, 13 Am. St. Rep. 221; Abbot v. Gore, 74 Wis. 509, 43 N. W. 365; G., C. & S. F. Ry. Co. v. Blackeneyer Stevens-Jackson Co., 48 Tex. Civ. App. 443, 106 S. W. 1140.”
The facts of these cases bring them well within the above rule. It is true that there had been a fire in the wing of the house, used as a kitchen and a bedroom, on the day in question; but the evidence makes it so clear that the fire did not originate from that source, or in that part of the house, that this point, of possible origin is eliminated.
Two of the appellees, Mr. and Mrs. Bauer, have each filed answers to the appeal, praying that the judgments in their favor, be increased to the amounts sued for by them.
We, however, think that the court below has properly fixed the amounts due them.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgments appealed from, in these consolidated cases, be affirmed; appellant to pay the costs.