ST. PAUL,, J.
On May 24, 1917, plaintiff’s sawmill, planing mill, and lumber yard, together with a number of houses belonging to plaintiff, and used as residences by its employees, were destroyed by fire. This is an action to recover from defendant the loss thus sustained, on the ground that the fire was started by a spark emitted by one of defendant’s locomotives whilst switching in and about the lumber yard. The defense is substantially the general issue; thei’e was judgment below for defendant, and plaintiff appeals.
I.
The undisputed facts of the case are that the season had been dryer than usual since the first of the year; that there had been no rain at all for 12 days before the fire; that on the day of the fire a 10 to 15 mile wind had blown steadily all day out of the southeast or thereabout; that in leaving the yard the locomotive was obliged to pass between the wind and the point where the fire started; that the locomotive had a jagged hole, one inch by three, in what is known as th¿ table sheet, a part of the spark arresting apparatus, said hole being near the exhaust pipe, and immediately under the smokestack through which the exhaust reached the atmosphere; that the locomotive entered the yard about 3 p. m.; that an east-bound train which should have passed the yard at 3 p. m. was 20 minutes late that evening; that the switching operations took 50 minutes; and the fire'alarm sounded at 4:45 p. m. As to everything else there is absolute conflict both as to evidence and as to the effect to be given thereto.
II.
Plaintiff’s contention is that the locomotive left the. yard only 30 or 35 minutes before the alarm sounded; that the smoke from the fire was seen but not recognized, 10 or 15 minutes before the alarm sounded; that the locomotive emitted a spark or sparks, which, being carried by the wind, fell in or on a certain stack of dry lumber, wherein it found lodgment, and being fanned by the *409 wind, set fire theretowhich smoldered for a while and then burst into flame. The testimony was taken three years after the fire; and must therefore be read in the light of that circumstance. Sammie Charles and Johnnie Davis, working on a pile of lumber some few hundred feet away, say they saw smoke in the direction of the stack, but thought it was from the locomotive, which had passed them going out. But they could not remember that the locomotive had stopped right where they were working, nor that the hose had burst; they are not corroborated by Pigot the foreman as to his giving the alarm, and they are contradicted by Willie Francis, the fireman, who says that he saw the smoke from the door of the engine room, and blew the fire alarm. We conclude that they first saw the fire about the same time that Francis blew the whistle at 4:45.
Several witnesses for the plaintiff fix the time of the departure of the locomotive some half hour or so before the alarm whistle blew. On the other hand, the whole train crew of five men testify that they left the yard at 3:45. Hanley, the conductor, says he looked at his watch when he left Bowie station (about 5 minutes after leaving the yard) and it was then 3:50. We think that the testimony of trainmen in the matter of time is more reliable than that of other's; with them it is a matter of extreme importance as it means safety or peril to them in their occupation.
McMain, plaintiff's shipping clerk, testifies that the switching operations began only after the train passed, which was at 3:20, and that all the switching was done in the yard. To this plaintiff adds the 50 minutes, and thus fixes the departure of the locomotive at 4:10.
But Hanley testifies that the time for switching was computed from the time of entering the yard, and admittedly the locomotive first entered the yard at 3 p. m. The train crew testify that as the passenger train was late they left the yard and went over on the passing track and storage track to arrange the order of the cars which they were to leave in the yard. As to this the engineer (Blanchard) cannot be mistaken, for he had worked on that assignment only the day of the fire and the day before; and therefore cannot have confused any custom on previous occasions with what was -done on that day. The trial judge concluded that the locomotive left the yard at 3:45, and we think that his conclusion was correct.
A great deal of expert testimony was taken as to whether or not the locomotive could or could not emit a spark of. sufficient size to set fire to the lumber, which, as usual, is so conflicting as to lead nowhere. On the whole, however, our conclusion is the larger sparks coming from the fire box pass through the lower boiler tubes, and that this hole in the table sheet of less than 3 square inches, compared to the 400 square inches of openings in the netting of the spark arrester, could not have created such disturbance in the draft as to lift these larger sparks out of their usual path; but, on the other hand, this hole immediately beneath the smoke-stack must have caused some disturbance in the general direction of the smaller sparks, and our conclusion is that we should accept the testimony of several witnesses who say that the locomotive emitted sparks about the size of a buckshot, or pea, or the end of one|s little finger.
We have already said that the wind blew steadily that day out of the southeast or thereabout, at 10 to 15 miles an hour, and the locomotive, in going out, must pass between the wind and the point where the fire originated. If the wind blew direct from the southeast, the locomotive would have been 132 feet away when the spark left it to be blown to the point of origin; if the wind was more to the east, the distance might have been several hundred feet; if moré to *412 the south the distance might have been as little as 60 feet. But the preponderance of the evidence is thai the wind was from the southeast.
Ten to fifteen miles per hour means from 6 to 9 seconds to travel a distance of 132 feet, without any allowance for the small but appreciable time to overcome inertia and the ■initial momentum of the spark, for the locomotive was running against the wind. Exposed to the atmosphere for that length of time a spark of the size we have mentioned must have lost some of its exterior fire; and whether or not such a spark falling into some highly inflammable material might have set fire to it, is a matter of opinion or experiment. But in the case before us, we are dealing with a fire claimed to have started in a pile of cypress boards 1 inch thick, 12 to IS inches wide, and 18 to 20 feet long the boards spaced an inch or so apart, and the several layers separated by cross' pieces about an inch thick. The interstices between the boards in one layer did not coincide with those of the layer beneath, owing to the Varying width of the boards. So that before it reached the center of the stack (where the fire is claimed to have been located) a spark, whether entering at the side or from the top of the stack, would have had to “stagger” over or through a number of'these interstices before finally lodging. This again would have taken some further appreciable time. Even then the spark would have rested on a cypress board an inch thick and at least 12 inches wide.
The trial judge, who heard the evidence for 20 trial days in the course of three months, and then considered the case for 11 months before rendering his' judgment, was unable to satisfy himself that the fire originated from sparks emitted from the locomotive; and we ourselves, after listening to an exhaustive argument, and having complied with the constitutional requirement of having the voluminous record read by two judges, are unable to satisfy ourselves that the circumstances hereof would justify the conclusion that the fire originated as claimed by plaintiff.
III.
In Gulf, C. & S. F. Ry. Co. v. Blakeney-Stevens-Jackson Co., 4S Tex. Civ. App. 443, 106 S. W. 1141, the court said:
“We bear in mind * * * that every case must and will depend more or less upon the collection of circumstances disclosed by the evidence of the given case. It is laid down as a rule that evidence that the fire started up (1) immediately, or very soon after the passing of the train, and (2) there was no fire in the premises or vicinity of the premises before, and (3) there was no other apparent cause for a fire, is sufficient to warrant an inference of fact that the fire was emitted from the railway company’s passing engine. * * *
“Yet in passing upon the whole evidence of the case it must be borne in mind that these rules are rules of evidence and not of liability, and that the general burden of proof to make out a case of negligence rests upon plaintiff.
In Marande v. Texas & Pac. Ry. Co., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487, the Supreme Court of the United States took judicial cognizance of the fact that cotton ignited by a spark might smolder several hours before bursting into flame; and held, accordingly, that the issue of fact should be left to the jury whether the evidence in that case would justify a finding for the plaintiff that the cotton was set on fire by one of defendant’s locomotives, although there was apparently no evidence that the fire might have had some other origin.
In Walker Mercantile Co. v. Yazoo & Miss. Valley Ry. Co., 152 La. 1052, 95 South. 219, this court was “not unmindful of the fact that sawdust does not burn readily,” but found circumstances sufficient to conclude that the fire was traceable to sparks from defendant’s locomotive.
But in the case under consideration, we are not confronted with materials, which *413 when ignited, smolder before bursting into flame. Here we have a case of dry inch boards, which do not catch fire so readily, but once on fire burn rapidly. The very manner in which the pile was constructed left no room for smoldering, but was conducive to a quick fire. Hence we think that when this fire was discovered, it could not have been in progress for the hour which had elapsed, as we find since the locomotive departed.
IV.
Having reached the conclusion, as triers of the facts, that the fire could not have originated from a spark emitted from defendant’s locomotive, it is perhaps unnecessary to pursue the matter further, or state our reason for believing what might have been another cause to which the«fire might be ascribed.
Henderson Charles, a witness for plaintiff, testified distinctly that he was near the stack in which the fire was said to have originated after the locomotive had departed, and about half an hour before the alarm sounded. There was no fire there at that time.
Mr. Reddy, plaintiffs’ superintendent, testified that the grass was burnt between the stack where the main fire was and a stack in the rear thereof. 'He is corroborated by McMain, the shipping clerk, who saw smoke coming out of the stack in the rear; and Reddy cannot be mistaken about this, because he supervised the making of a plan of the fire by Mr. Lovel, the surveyor, who made his plan within two days after the fire; and that plan shows the two stacks as being those wherein the fire originated.
We are of opinion that this fire originated in the dry grass between the two stacks. And whilst it is shown that smoking was prohibited, and signs to that effect were posted about the premises, yet there were no watchmen, and there had been on previous occasions fire of unknown origin about the premises, which were open to the public; this particular part of the premises being far removed from the business offices and from the mills. It is also shown that on several occasions men had been discharged for smoking (though the time is not shown) and that about a month before this fire one of defendant’s section foremen had been seen smoking in the yard, and ordered to desist by plaintiff’s yard foreman.
Decree.
The judgment appealed from is therefore affirmed.
LAND, J., recused.