## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. ADCOCK.   (No. 6822.)

(Court of Civil Appeals of Texas. Austin. Dec. 17, 1924.)

1. Railroads ☞482(2)—Evidence held to show fire caused by sparks.

Evidence held to support verdict for plaintiff, in action against railroad for destruction of corn by fire, alleged to have been caused by sparks from one of defendant's engines.

2. Railroads ☞484(4)—Whether engine equipped with proper spark arresters held for jury.

In action against railroad for destruction of plaintiff's corn, alleged to have been caused by sparks from one of defendant's engines, notwithstanding testimony that engine was equipped with approved spark arresters, kept in good repair, and that they were inspected before and after trip, such issue was a question of fact for jury.

3. Appeal and error ☞1170(7)—Hearsay testimony as to statement by railroad employé that train caused fire held prejudicial error, and not within immaterial error rule.

In action against railroad for destruction of plaintiff's corn by fire, alleged to have been caused by sparks from one of defendant's engines, admission of plaintiff's hearsay testimony that defendant's foreman stated on following morning that train caused fire, and testimony of another witness that "some one" said train set out fire, held prejudicial error, and was not within rule 62a as to nonreversal for immaterial error, as jury might have considered it in arriving at their verdict, since it came from an employé of defendant who purported to know.

4. Evidence ☞213(1)—Testimony as to defendant's offer of compromise held error.

Admission of plaintiff's testimony as to an offer on part of defendant to compromise claim in suit held error.

Appeal from Comanche County Court; F. J. Reese, Judge.

Action by R. J. Adcock against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

E. B. Perkins, of Dallas, and A. R. Eidson and A. E. Nabors, both of Hamilton, for appellant.

Callaway & Callaway, of Comanche, for appellee.

BLAIR, J. Appellee sued appellant for $250 damages, alleged to have been occasioned by sparks escaping from one of appellant's engines, and setting fire to and burning appellee's corn of that value.

Appellant formally answered by general demurrer and denial, and specially pleaded that it used ordinary care in equipping the engine in question with the most modern and best approved spark arresters in general use, which were in good repair, and that said engine was being operated with ordinary care at the time in question. The cause was tried to a jury upon special issues, and upon their answers thereto the court rendered judgment for appellee for $166.65. From this judgment appellant has perfected this appeal.

Special issue No. 1 and the jury's answer thereto are as follows:

"No. 1. Was the corn on plaintiff's land set on fire by sparks from defendant's locomotive No. 174 on or about the 11th day of March, 1920? Answer yes or no. Answer: Yes."

[1] Appellant's first assignment is that the evidence is insufficient to support the jury's verdict and the court's judgment on this issue, in that the evidence does not show defendant's engine set out or caused the fire alleged to have burned and destroyed appellee's corn. We do not sustain the assignment.

The proof on the issue is substantially as follows: Appellee's farm was situated on the north side of and adjoined appellant's railway track near the station Gustine. The fire occurred March 20, 1920. The corn was the crop of the previous year, and was still standing on the stalk in the field, due to excessive rains making it impossible for it to be gathered. There was a small cemetery in the corner of the field adjoining the railway, to the extent of its south line. Along the right of way touching this cemetery and appellee's field was much dry grass. The ground was covered with a mat of dead dry

---

grass in the cemetery and in appellee's field. No one was immediately present when the fire started; hence no one knew the exact place it started. Witnesses, who reached the fire and attempted to check it a few minutes after it started, testified that some grass was burned on the right of way, a small amount burned in the cemetery, but that it spread over about 10 or 12 acres of appellee's corn land; that the high south or southwest wind blowing at the time drove it from its starting point on or near the right of way across a small portion of the cemetery, thence across appellee's land, or that from the lay of the burned portion it could have started near the right of way fence directly on appellee's land.

Mrs. P. J. Talley, a witness for appellee, testified:

"We lived on a place down this side of Gustine in the year 1919. I was living there in March, 1920. I lived on the Fritts place right across the railroad track from Rufe Adcock's farm. I was there in March, 1920, when the fire broke out in the field. I remember that occasion. I do not remember whether it was in March or not. I was at home that afternoon. I do not know how far the house was from the cemetery, but I judge 200 or 300 yards. I remember the train coming along there that afternoon. The train had not been gone very long until I noticed the fire. It was burning pretty good when I saw it. It had already burned a considerable lot when I noticed it. I did not see any one over there that afternoon."

Several other witnesses testified to having seen the train pass, and to having seen the smoke from the burning grass shortly thereafter, although they were a considerable distance from the fire. There was no proof that the fire could have originated from any other source than from appellant's engine. There was proof that a small closet stood on the cemetery lot, which could be and was occasionally used by persons passing along the railway track, or those coming to the cemetery; but there was no proof whatever that any one had used the closet, or had been seen near the place of the fire on the day of the fire. The engine in question was traveling slightly up grade at the time it was supposed to have emitted the sparks causing the fire and destroying appellee's corn. It was burning coal.

Witness L. A. Wright, the engineer, testified by deposition in part as follows:

"If the corn field was set on fire by sparks directly from the engine to the field, then the spark arrester must have been in a defective condition. On this trip I had a little better than a half train of tonnage and there was no occasion to work the engine unusually hard. The engine was worked with a light throttle and with the reverse lever hooked up."

The above testimony is sufficient to support the inference that the fire was probably caused by a spark or sparks of fire from appellant's engine, and that any other probable source or origin was fairly negatived. The rule as to this question is announced in Moose v. Ry. Co., 212 S. W. 646, in an opinion by the Commission of Appeals, approved by the Supreme Court, in the following language:

"The character of proof required of plaintiff in this regard is thus stated in Ruling Case Law, vol. 11, pp. 994, 995:

"'In actions against railroad companies for injuries to property by communicated fires, while it is necessary to trace the liability for the fire to the defendant, and proof of a mere possibility that the fire communicated in the operation of the road is not sufficient, yet it is not required that the evidence should exclude all possibility of another origin or that it be undisputed. It is sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause, and the origin of the fire has generally been held sufficiently established by inferences drawn from circumstantial evidence. Thus it has frequently been held that from proof that an engine passed near inflammable material immediately before the discovery of fire, there being no evidence to explain its origin, the jury may infer that the fire originated from sparks from the passing engine. If it is sought to recover damages for fire alleged to have been caused by the negligent escape of sparks from a locomotive, and the evidence as to the origin of the fire is circumstantial, the fact that the weather had been dry for several days prior to the fire is admissible in connection with other circumstances tending to show that the fire was caused by sparks emitted from such locomotive.'

"'We bear in mind in passing upon the sufficiency of these facts offered that every case must and will depend more or less upon the collection of circumstances disclosed by the evidence of the given case.' Railway v. Blakeney, 48 Tex. Civ. App. 443, 106 S. W. 1140.

"'From the nature and circumstances of such cases, considerable latitude must be allowed in the introduction of testimony and in the drawing of inferences as to the origin of the fire.' Railway v. De Busk, 12 Colo. 294, 20 P. 752, 3 L. R. A. 350, 13 Am. St. Rep. 221, citing 1 Thompson on Negligence, 159; Railway v. Jones, 9 Colo. 379, 12 P. 516; Butcher v. Railway, 67 Cal. 518, 8 P. 174."

"These general principles are well recognized, we believe, by adjudications in this state. Lumber Co. v. Railway, 106 Tex. 13, 155 S. W. 175; Railway v. Curry, 135 S. W. 592; Railway v. Blakeney, supra."

Appellant cites in this connection the cases of Talley v. Ry. Co. (Tex. Civ. App.) 176 S. W. 67, Ry. Co. v. Meentzen, 52 Tex. Civ. App. 416, 113 S. W. 1000, and Ry. Co. v. Gentry (Tex. Civ. App.) 74 S. W. 607. We think these cases not parallel with the case at bar. A different state of facts existed in those cases, for in each instance the engine was equipped with an oil burner; and the experts testified that there was always more danger of sparks escaping from an engine

burning coal, equipped with the best of spark arresters in good repair, than from an engine burning oil. The inference that the fire was probably caused by a spark from the engine was fairly deducible from the following circumstances in evidence in this case:

That the engine and train of appellant passed the place where the fire started in a reasonably short time before the fire, going slightly up grade. It was burning coal, and, if sparks escaped under such circumstances, the spark arresters, according to the experts, were not in good condition. The fire started on the side of the track where the prevailing wind blowing at the time would naturally blow the sparks. No one was seen at or near the place where the fire started on the day of the fire, and no circumstance was in evidence tending to explain its origin upon any other hypothesis than that a spark or sparks from the engine in question set out the fire. In this conclusion we think the rule announced in Moose v. Ry. Co., supra, is correctly applied here.

[2] Appellant's second and third assignments are that the court erred in failing to instruct a verdict for it upon its proving that the engine in question, and alleged to have set out the fire which destroyed appellee's corn, was equipped with the best approved spark arresters in general use, and that it had used ordinary care to keep them in good repair.

The following are the court's special issues and the jury's answers thereto on these questions:

"No. 3. Did the defendant use ordinary care to equip and keep in repair its engine No. 174 with the best approved spark arresters in general use to prevent their emitting live sparks and cinders therefrom? Answer yes or no. Answer: No."

"No. 4. Did the defendant, its agent, servants, and employés use ordinary care in the handling and operating its said engine No. 174 to prevent sparks of fire and live cinders to escape therefrom? Answer yes or no. Answer: No."

Appellant's employé, charged with the duty of inspecting the spark arresters on its engines, testified in this connection that the engine in question was equipped with the best approved spark arresters, and that he examined them just before the engine made the trip on which it was alleged to have set out the fire that destroyed appellee's corn, and shortly after its return he again examined them, and on both occasions found them to be in good repair.

We think these assignments are not well taken, for the simple reason that the above issues sought to be proved by appellant were questions of fact, and the jury did not have to believe the witnesses testifying thereto. In this connection appellant's engineer testified that, if a spark escaped and set the appellee's corn afire, the spark arresters "must have been in a defective condition."

The rule is well settled as to these questions in the Moose v. Ry. Co. Case, supra, and by the Supreme Court in the cases there cited, in the following language:

"The burden of proof is upon the plaintiff to establish the fact that the fire originated from one of defendant's engines. When this burden is met, 'the law presumes negligence, and the plaintiff is entitled to recover for damages done by the fire so set out, unless the railroad company shall prove that its engine was provided with the best approved apparatus for arresting sparks and preventing their escape, and properly operated.' Railway v. Levine, 87 Tex. 437, 29 S. W. 466; Scott v. Railway, 93 Tex. 625, 57 S. W. 801; Railway v. Johnson, 92 Tex. 591, 50 S. W. 563."

[3] Appellant's sixth, seventh, and eighth assignments are sustained. By these assignments it complains of the action of the trial court in permitting appellee to testify in his own behalf over objection to the following hearsay testimony:

"Mr. Gray wrote that [the claim] out. He is the section foreman. He wrote it out and gave it to me. He filled them out and kept one and gave me one. That is the one he gave me. Mr. Gray told me that the train set it afire. He said it caught between the railroad and the cemetery. He made that in this report. We went out next morning and looked at the fire. He did not question but what the train did set it afire. He said he went out that night and saw where it caught."

We think this testimony clearly hearsay and bears upon a material issue. The only fact that appellee was charged with the burden of establishing, to make a prima facie case of liability on the part of appellant, was that appellant's engine in question set out the fire which destroyed appellee's corn. The above testimony sought to establish that one material fact by testimony, which in no way can be construed as res gestæ, for the conversation took place on the morning following the fire of the evening before, and the party alleged to have made the statements or declarations was not present when the fire started.

For the same reason appellant's ninth assignment should be sustained. By this assignment it complains of the trial court's permitting Frank Adcock, a witness for appellee, to testify over objection, that either that day (the day of the fire) or the next some one said the train set out the fire. It was not shown who this "some one" was. The testimony is clearly hearsay, and upon a material issue.

Appellee insists that, if the admission of the above testimony was erroneous, it is harmless, since the proof otherwise clearly establishes appellant's liability, and that rule 62a which provides that cases should not be reversed because of immaterial errors

should apply here. We think the testimony was of such nature that the jury might have reasonably considered it in arriving at their verdict upon the issues it tended to establish, and therefore does not come within rule 62a.

Appellee had to rely upon circumstantial evidence to prove his case. The improper evidence admitted was in the nature of a declaration or admission of appellant's employé bearing directly upon the issue sought to be established by circumstantial evidence, and was, in our opinion, probably the most damaging testimony given on such issue. Such declaration or admission, coming from an employé who purported to know, was of such import that the jury might be reasonably calculated to and probably did consider it in rendering their verdict.

The purpose of rule 62a was announced in the case of Golden v. Odiorne, 112 Tex. 544, 249 S. W. 822, to be:

"Under the doctrine of harmless error our courts have always declined to disturb a ruling or judgment of the trial court, although palpably erroneous, where it appeared that no injury resulted to the complaining party. Rule 62a merely enlarged this doctrine so as to cast upon the complaining party the burden of showing at least that the error probably resulted to his prejudice. It was not the purpose of the rule, we think, to require the complaining party to demonstrate that, but for the erroneous ruling, a different judgment would have resulted. Such interpretation would in many cases operate as the denial of a substantial right."

In view of this construction of rule 62a and the nature of the improper testimony admitted, we feel that we must say its introduction probably resulted to appellant's prejudice.

[4] Appellant's tenth assignment is sustained. By this assignment appellant complains of the action of the trial court in permitting appellee to testify on direct examination, over objection, as to an effort on the part of appellant to compromise the claim in suit.

Appellee testified on direct examination, in his own behalf, that "They offered to pay me a small part of it." On cross-examination he admitted that this was "just a matter of trying to compromise with me."

"The law favors compromise settlements and the long established policy is that declarations and admissions made in an effort to settle out of court cannot be received as evidence." Lomax v. Trull (Tex. Civ. App.) 232 S. W. 861.

It is also well settled that offers to compromise disputed claims are not admissible as admissions of liability. It is also well settled that an offer purely of compromise, involving no admission of liability, should not be admitted in evidence, because it would lead the jury to believe that the offerer was

conscious of his liability. Lomax v. Trull (Tex. Civ. App.) 232 S. W. 861; Investment Co. v. Flanagan (Tex. Civ. App.) 241 S. W. 702; Hamilton v. Hannus (Tex. Civ. App.) 185 S. W. 938; Ry. Co. v. Pryor (Tex. Civ. App.) 238 S. W. 1040; Staskey v. Smith (Tex. Civ. App.) 240 S. W. 1032; McDonald v. Whaley (Tex. Civ. App.) 228 S. W. 313.

Appellant's other assignments are overruled.

For the reasons above set forth in this opinion, the cause is reversed and remanded.

Reversed and remanded.