**(98 South. 555)**

**· No. 25713.**

## MANSON v. BOARD of LEVEE COM'RS, ORLEANS LEVEE DIST.

(Dec. 17, 1923.)

*(Syllabus by Editorial Staff.)*

**Evidence** ⟜142(4)—Value of property taken for levee purposes fixed by average of what owners accepted for other property.

In an action for the value of land appropriated by a board of levee commissioners for levee purposes, *held* that 7.2 cents per square foot, the average price accepted by others whose property was taken at the same time, was the fair value of plaintiff's property.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by James J. Manson against the Board of Levee Commissioners for the Orleans Levee District. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

James Wilkinson, of New Orleans, and Arthur McGuirk, for appellant.

Buck, Walsh & Buck and Dart, Kernan & Dart, all of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. This is an action for the value of land appropriated by the defendant for levee purposes. The only issue involved is the quantum to which plaintiff is entitled.

The land lies on the right (west) bank of the Mississippi river, next below the United States Immigration Station, now practically deserted. Other lands were appropriated at the same time, lying below those of plaintiff; and still others, lying above the Immigration Station but below the United States Naval Station, now virtually abandoned.

All these lands are in the corporate limits of the city of New Orleans, but on the other side of the river from the main city, and below the old city of Algiers. They lie in a section at present far removed from all commercial activity, and not at all desirable for residential purposes. It is the sincere desire and hope of all that this section may some day be a center of manufacturing and shipping industry. But it must be confessed that just at this time it is *not;* and property in that section is now valuable mostly for farming purposes.

### I.

In Bowie Lumber Co. v. Morgan's La. & Tex. R. & S. S. Co., 154 La. 407, 97 South. 591, we found that a few pages of testimony upon *facts* were more helpful to us in reaching a conclusion than many hundred pages of expert opinion. In Ward v. Board of Levee Commissioners, 152 La. 158, 92 South. 769, we found that a single well-attested bonâ fide and contemporaneous transaction between business men was a safer guide to the values of real estate than the abstract opinions of many experts.

For in matters involving *opinion* only, i. e., *judgment*, there is always ample room for honest differences; so that for every Roland brought forward to champion one side, there will always be found an Oliver to uphold the other. Vide the proverbial disagreements between doctors; the earnest briefs of opposing counsel in lawsuits; the "bare majority" decisions by the highest courts of the land; etc., etc., etc.

The province of an expert is to inform courts and laymen as to the *accepted* beliefs in their own line; when they go beyond accepted opinions and express opinions of their own, they leave the domain of *fact* and enter upon that of *speculation*. In one case their testimony is most helpful to courts and juries; in the other it serves only to confuse, and the more sincere and confident the witnesses, the greater the bewilderment of those who may be forced to listen.

## II.

We have listed below the properties taken by the levee board in the order in which they come, going down the river, giving the area taken from each proprietor, the price paid therefor, and the price per square foot to each, as follows:

| Property Holder. | Sq. Ft. Taken. | Price Paid. | Sq. Ft. Basis. |
|---|---|---|---|
| Naval Station. | | | |
| ( 1) C. Leonard | 37,026.0 | $ 4,500.00 | 12.1 cents |
| ( 2) P. Willett | 28,314.0 | 3,144.40 | 11.1 " |
| ( 3) Widow Gersdorf | 6,098.0 | 600.00 | 9.8 " |
| ( 4) A. M. Hines | 18,730.8 | 2,110.60 | 11.2 " |
| ( 5) Widow Strewby | 19,166.4 | 2,300.00 | 12.0 " |
| ( 6) Dennis Cuquet | 11,768.5 | 2,500.00 | 21.2 " |
| ( 7) Wm. Lorenz | 3,405.4 | 425.00 | 12.4 " |
| ( 8) Mrs. Serpas | 2,826.5 | 1,200.00 | 42.4 " |
| Immigration Station. | | | |
| ( 9) J. J. Manson | | | |
| (10) Holy Name Church | 4,247.6 | 600.00 | 14.1 " |
| (11) J. H. Lewis | 29,185.2 | 1,300.00 | 4.4 " |
| (12) Ursuline Convent | 115,434.0 | 1,300.00 | 1.1 " |
| Total | 276,202.4 | $19,980.00 | 7.2 cents |

## III.

It will be observed that, of the twelve parcels taken, eight lie *above* the Immigration Station; and it will be found that the aggregate area of these eight parcels is 127,335.6 square feet, for which a total of $16,780 was paid, making an average of 13.2 cents per square foot.

On the other hand, the three pieces situated (like plaintiffs) *below* the Immigration Station aggregate 148,866.8 square feet, and the total price paid was $3,200, making an average of 2.2 cents per square foot.

Beyond a doubt, these last properties approximate more closely the value of plaintiff's property than do the others. And, whilst we appreciate the fact that the Ursuline Nuns may have sold at a low price (1.1 cents per sq. ft.) because they had just received a satisfactory price for other property taken by defendant about the same time, yet we see no reason whatever for thinking that Lewis, who received only 4.4 cents per square foot, took any less than he thought his property was worth. We concede, however, that plaintiff's property, being *above* the Lewis property, and next to the Immigration Station, has *possibilities* which the Lewis property has not; the Immigration Station *may* be rehabilitated. But we find no reason to think plaintiff's property is worth *double*, or more than double, the Lewis property.

On the whole we conclude that the average price accepted by all others whose property was taken at the same time (above the Immigration Station, as well as below it) measures the fair value of plaintiff's property. It represents the valuation fixed upon by all those interested, both pro and con; and we think *that* a just price for defendant to pay. The above list shows that price to be 7.2 cents per square foot; and, as defendant took 72,745 square feet from plaintiff, it should pay him $5,237.64.

### Decree.

The judgment appealed from is therefore amended, by reducing the amount allowed plaintiff to $5,237.64, with legal interest from judicial demand, and as thus amended it is affirmed; plaintiffs to pay the costs of appeal, and defendant to pay all other costs.