LAND, J.
 

 The 'Lyon Lumber Company owns 53,508.97 acres of cut over lands in the parish of Livingston, classified by plaintiff company as follows:
 

 Pine denuded lands, class A............ 10,550.31 acres
 

 Pine denuded lands, class B............ 28,853.74 acres
 

 Hardwood lands, class A................ 167.03 acres
 

 Hardwood lands, class B................ 1,314.84 acres
 

 Fresh water marsh, class A............ 8,076.82 acres
 

 Fresh water marsh, class B............ 4,545.83 acres
 

 Total ................................. 53,508.07 acres
 

 Those lands were returned by said company for assessment for the year 1924, at $3 per acre, or a total valuation of $160,526.91, but the assessor of the parish of Livingston, over the protest of plaintiff, changed the classification and increased the assessment as follows :
 

 “Denuded pine lands, class A, 26,755 acres at $10 per acre, or $267,565; denuded pine lands, class B, 26,755 acres at $6 per acre, or $160,000; or a total valuation of $427,555.”
 

 The parish board of equalization, when applied to for relief, assessed the 10,550 acres of pine class A land at $12.50 per acre, or $131,875, the 28,853.74 acres of pine class B land at $10 per acre, or $288,540, and classified all the class A and B “hardwood and fresh water marsh” land as 14,105 acres of hardwood, no class, at $7 per acre, $98,735, making a total valuation on the lands of $519,150-
 

 On appeal to the Louisiana tax commission, a reduction in the assessment was'refused, on the ground that all classes of property of like character in Livingston parish were assessed on a uniform and equal basis.
 

 Before the hearing before the Louisiana tax commission, the police jury of the parish of Livingston, acting as a board of reviewers, refused to recommend to the commission that it reduce .the valuations placed on the lands of plaintiff company to those returned by said company. Plaintiff company contends that $8 per acre is a fair and actual cash value of said lands, taken as a body, or taken by smaller subdivisions, based on an average value of said lands, and sues for the reduction of the assessment to $160,526.90, as originally returned by it.
 

 The judgment of the lower court reduced the assessment to $6 per acre and condemned defendants to pay all costs.
 

 Plaintiff company and defendants have appealed.
 

 Respondents have answered the appeal and pray that the judgment be amended, by increasing the assessment from $321,053.82, or $6 per acre, to $519,150, the amount fixed by the Louisiana tax commission; that, as thus
 
 *993
 
 amended, the judgment be affirmed; and that appellant be condemned to pay the costs incurred in both courts, and attorney’s fees in the amount of 10 per cent, as fixed by law.
 

 1. The population of Livingston parish is small. The chief occupations are farming and timber work. No large industries have been established in the parish. Seventy per cent, of the land is owned by nonresidents, and is either timbered or denuded. Not more than 12% per cent, of the remaining 30 per cent, owned by residents is in cultivation. Livingston parish is still undeveloped territory, offering no special inducements to settlers.
 

 It would cost about $50 per acre to clear such denuded lands as are owned by the plaintiff lumber company. While there are two railroads and one good road running through these lands, there are thousands of acres in the tract that are remote and inaccessible.
 

 During the.last two years these lands have been placed on the market by the Lyon Lumber Company at $3.50 and $4 per acre, and have been advertised for sale in the St. Louis, Shreveport, New Orleans, Memphis, and Cincinnati newspapers, without securing a purchaser.
 

 The average assessment of these lands by state and local authorities at $9.51 per acre is therefore clearly speculative, and not the actual cash value of the property.
 

 Possible future values are not the proper basis for arriving at the present actual cash value of property. Manson v. Board of Levee Commissioners, 154 La. 995, 98 So. 555.
 

 “The actual cash value of real or personal property is the price it would sell for, for cash, in the ordinary course of business, free from incumbrances, otherwise than at forced sale.” Morgan’s La. & T. R. & S. S. Co. v. Board of Reviewers, 41 La. Ann. 1156, 1159, 3 So. 507, 511; Act 170 of 1898, § 91.
 

 Joseph E. Lemieux, an experienced timber estimator, who has had 18 years experience in inspecting lands in Livingston parish, testifies that plaintiff company’s land is low and flat, without drainage, and that about '30 per cent, of the tract is fit for cultivation.
 

 The witness states that there is a growth of young timber on it, and that, as a reforestation project, he would not recommend a purchase price oi^ over $3 per acre for the whole tract.
 

 In fact, this witness declares that it is not worth over $3 per acre, including land and timber.
 

 Lemieux, in the year 1924, inspected the lands of plaintiff company for the Great Southern Lumber Company as a prospective purchaser. The entire tract of 53,000 acres was offered for sale by the. Lyon Lumber Company to the Great Southern Lumber Company at $4 per acre, and the offer was declined.
 

 Colonel W. H. Sullivan, vice president of the latter company, did not consider the lands worth over $2.50 per aqre.
 

 -Mr. Bloss, general manager of the Lyon Lumber Company, testified on the trial that these lands were still for sale at $3.50 per acre.
 

 Mr. Kinchen, who is engaged in the real estate and timber business, considers that the lands have an average value of $3 to $4 per acre.
 

 Mr. Church, also a witness for plaintiff, a timber estimator,, went over these lands, and made maps and surveys of the same. His testimony is to the effect that about 40 per cent, of the lands are dry and 60 per cent, wet; that they are cut up, consisting of ridges, swamps, and slashes; and that they were not marketable as an agricultural proposition. All of the plaintiff’s witnesses agree that the lands are of negligible value as a timber proposition.
 

 Mr. Smith, a witness for defendants, admits that it would not pay to manufacture
 
 *995
 
 the timber, but that there is “quite a bit of it that can be gotten out with trucks, some stave and cross-tie stuff.”
 

 When asked by the court if there was any appreciable amount of timber left, the witness replied: ‘Tn spots — small bits; not a good deal.”
 

 The main witness of defendants, Mr. Ste-gall, who is secretary of the board of equalization of the parish of Livingston, admits that he has visited, roughly speaking, from 8,000 to 12,000 acres in this tract.
 

 The value of these lands as an agricultural proposition is shown by the following examination of this witness:
 

 “Q. Suppose you wanted to put a farm on that land. Sou say the Lyon Lumber Company will not sell a small tract of chis land. Why would people go and build on this area, far away from good roads?”
 

 “A. I will say that it is not an attractive proposition. I don't think but few people would go on a remote 40 like that, or remote area like that; but the timber is a consideration.” Tr. 77.
 

 It has been fully demonstrated in this case that these lands could not be sold in tbe last two years at $3.50 or $4 per acre, timber included, and the witness Mr. Stegall is one of the parties who had an option on these lands at $4 per acre, yet he could not effect a sale at this price. Nevertheless this witness and other witnesses for defendants testify that this entire tract, practically denuded of timber, remote from good roads and transportation facilities, and with only 30 to 40 per cent, tillable land, is worth from $7 to $10 per acre.
 

 Such testimony is not reasonable, in our judgment. It has no real basis upon which to rest, except the value of particular tracts with which the witnesses were familiar. The land of plaintiff lies practically in one body. “In estimating land which is to be assessed as one parcel, tbe estimate should be of tbe whole, and not parts separately, and then added together.” The question in this case is not “what would this or that part of it sell for, if separated from the rest, but what would the property as it is — as the owner actually holds it — sell for, at a fair private sale?” State, Colwell, Prosecutor, v. Abbott, 42 N. J, Law. 115; People ex rel. Empire Mort. Co. v. Cantor, 197 App. Div. 437, 189 N. T. S. 646.
 

 We think that this question is clearly answered by the facts of the case. The tract as a whole should be assessed at $3.50 per acre, tbe price at which the owner still offers the property for sale. Assessments at $6 to $12 per acre are clearly fanciful and speculative, and are not based on actual present values. It is clear that there has been no demand for these lands during the last two years.
 

 Plaintiff company has a clear constitutional right to complain of the assessment of its lands at more than their actual cash value, and to reduce the assessment. Const. 1921, art. 10, § 1; Act 140 of 1916 as amended by Act 211 of Acts 1918.
 

 2. As plaintiff has succeeded in reducing its assessment more than 25 per cent, of the reduction claimed, the attorneys for the tax collector in this case are not entitled to receive a commission of 10 per cent, to be assessed as a penalty against plaintiff company, the taxpayer. Section 16 of Act 140 of 1916.
 

 It is therefore ordered that the judgment appealed from be amended by reducing the assessment of plaintiff company to $3.50 per acre, and that said judgment, as amended, be affirmed. Defendants to pay the costs of tbe appeal, and plaintiff company to pay the co'st of the lower court.