No. 643

First Circuit

THE LONG-BELL LUMBER CO., INDUSTRIAL LUMBER CO., INC., FOREST LUMBER COMPANY v. LA. TAX COMMISSION ET AL.

(May 6, 1930. Opinion and Decree.)

F. E. . Powell, of De Ridder; Thompson & Ferguson, of Leesville; Hackenyos, Provosty & Staples; White, Holloman & White and C. K. Staples, of Alexandria, attorneys for plaintiffs, appellees.

C. D. Reed, of Oakdale, and Rene A. Viosca, of New Orleans, attorneys for defendants, appellants.

LEBLANC, J. The issues in these three cases are the same. They were consolidated in the lower court for the purpose of trial, and the evidence in each was to be considered in all, as far as it was applicable.

From a judgment favorable to each plaintiff in the district court, an appeal was granted to the defendants in each case. In this court, the cases are again consolidated for argument and hearing.

The question involved is the assessment, for purposes of taxation, of cut-over pine lands in Allen parish. The combined area comprises approximately 60,000 acres. Each owner had returned his acreage for assessment at $3 per acre. The taxing authorities increased the valuation in each case to $4.25 per acre, whereupon these suits were instituted to have the increased valuations declared illegal, null, and void, and to have the court order the proper reduction, basing the amount of taxes on an assessment of $3 per acre.

For the purpose of taxation, the price for which land can sell for cash, without incumbrance, is to be used as the actual cash value in making the assessment. There is an abundance of evidence in these cases, that these lands, taken as a whole, do not have a selling value of more than $3 per acre. Indeed, as we read the brief of counsel for defendants, they yield this point, maintaining only that the unit rule or system of assessment cannot be applied in the case of these plaintiffs, as they each have offered for sale and in some cases have actually sold small quantities of these lands at prices exceeding $5 per acre.

In upholding the unit rule, the district judge applied the principle which governed the Supreme Court in deciding the case of Lyon Lumber Co. vs. Louisiana Tax Commission, reported in 158 La. 990, 105 So. 39, 40. In that case the owner had rendered for assessment at $3 per acre some 53,000 acres of land, of which almost 30,000 acres were denuded pine lands, about 1,500 acres hardwood lands and the balance fresh-water marsh-lands. The taxing authorities, as in the present cases, had increased the valuations, and suit was brought to compel a reduction. To this extent it can be said that the main issue involved was the same as we have now before us. After hearing considerable testimony as to the character of these lands, their selling and other values, as well as the unsuccessful efforts that had been made to sell them, the lower court rendered judgment ordering a reduction of the assessment, which judgment was amended by the Supreme Court ordering a still further reduction. In the course of its opinion, the court said:

"The land of plaintiff lies practically in one body. 'In estimating land which is to be assessed as one parcel, the estimate

should be of the whole, and not parts separately, and then added together.' The question in this case is not 'what would this or that part of it sell for, if separated from the rest, but what would the property as it is—as the owner actually holds it—sell for at a fair private sale?' State Colwell, Prosecutor v. Abbott, 42 N. J. Law, 115; People ex rel. Empire Mort. Co. v. Cantor, 197 App. Div. 437, 189 N. Y. S. 646. We think that this question is clearly answered by the facts of the case. The tract as a whole should be assessed at $3.50 per acre, the price at which the owner still offers the property for sale."

It would be difficult to escape the force and effect of that language in considering the facts in the cases now before us.

The defendants have built their argument around the expression, "As the owner actually holds it," as used in the opinion quoted from, contending that the offers for sale and actual sales made by the owners, in these cases, of smaller tracts from the larger area, preclude them from claiming that they hold their lands as a whole. We do not construe that expression as relating so much to the manner in which the owner holds his land for sale, as it does to the way in which he actually and physically owns it. Conceding their point, however, and giving their argument all the force that we can, the facts in these cases refute it, as the evidence is overwhelming that the real desire and intention of the owners is to sell their lands in a body, and as such they offer and hold them for sale. Moreover, it strikes us that the defendants have gone far in recognizing the fact that the lands are held as a unit when they themselves use the unit system in placing them on the assessment roll at $4.25 per acre. It seems a bit inconsistent for them to use the method of assessing lands at a uniform value per acre and deny that same right to the owner in making his rendition.

The trial judge was correct in holding that a few sales of smaller tracts by these owners, because of their more favorable location and peculiar conditions that gave them a greater relative value, could afford no reasonable basis for the valuation of the tract as a whole. In an effort to weaken the force of the court's finding on this point, and in criticism of its calculation of the percentage of the acreage so sold, as compared to the total acreage, counsel for the defendants point to the fact that another corporation holding a vast acreage of land of the same character, has actually disposed of 165,000 acres at an average price of $20 per acre. It is a fact, testified to by Mr. Robert Scalfi, field manager of the Long-Bell Farm Land Corporation, a subsidiary of the Long-Bell Lumber Company, that, out of a holding of about 400,000 acres in Beauregard and other neighboring parishes, he did manage to sell approximately 165,000 acres at an average price of $20 per acre. But it took him sixteen years of hard and persistent effort and the application of the most modern methods of a great sales organization to accomplish that task, and his company found, after balancing their accounts on these sales, that the selling cost per acre averaged $16. Moreover, at this time they have had to repossess 48 per cent. of the quantity sold by reason of default on the part of the buyers on their contracts of sale. In the light of these facts and under these conditions, it can hardly be said that the venture of that company was profitable, and it is very doubtful that the net yield per acre averaged more than $3.

It seems that, in most of the sales of the smaller tracts at prices of $5 or more per acre, the expenses of sale were always correspondingly more, and, besides, any amount realized over $3 per acre

was always figured as affording a means of further reducing the average price per acre in offering for sale the tract in a body.

We conclude, as did the district judge, that, considered in its entirety, no one of any of the three tracts of land involved in these cases has a greater cash selling value than $3 per acre, and that, being the value to be used in assessing them for taxation, the plaintiffs are entitled to have them placed on the assessment roll at that valuation.

The judgment in each case is therefore affirmed.