(132 So. 507)

## PEAVY–BYRNES LUMBER CO. v. LOUISIANA TAX COMMISSION et al., and three other cases.

### No. 30918.

Feb. 2, 1931.

Frank E. Powell, of DeRidder, for appellants Long-Bell Lumber Co. and Long-Bell Farm Land Corporation.

Thompson & Ferguson, of Leesville, for appellants Peavy-Byrnes Lumber Co. and Delta Land & Timber Co.

Percy Saint, Atty. Gen., Rene A. Viosca, Sp. Asst. to Atty. Gen., and Ped C. Kay, of De Ridder (John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty., both of Lake Charles, of counsel), for appellees.

BRUNOT, J.

The four above-entitled cases present the same issues. There are four separate appeals, but the cases were consolidated for trial in the court below and were tried by a jury.

The suits are for the reduction of the assessment of certain cut-over lands, in Beauregard parish, from $4.25 per acre to $3 per acre. In each suit there was judgment for the defendants maintaining the assessment and taxing the plaintiff with attorney's fees and costs.

The sole issue in the cases is one of fact, viz., the value of the lands involved. The plaintiffs admit that small tracts of land, of the same character, where owned singly by individuals, are worth the amount of the assessment, but they contend that where owned in large tracts, such as the lands of the plaintiffs, the value of the land, as a whole, is less per acre and the assessment thereof should be reduced accordingly. The defendants cite the constitutional provision (Const. 1921, art. 10, § 1) that "all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax," and contend for the enforcement of the rule of "equal rights to all and special privileges to none." It is argued that the constitutional provision requiring uniform taxation would be as effectually violated by inequalities in assessment as by a different millage.

As relates to the lands of the Long-Bell Lumber Company and the Long-Bell Farm Land Corporation, the evidence conclusively shows that the Long-Bell Lumber Company sold various tracts of its cut-over land to the Long-Bell Farm Land Corporation for a standard price of $5 per acre, and that the Long-Bell Farm Land Corporation has disposed of a large part of said lands at, approximately, an average price of $25 per acre. It is admitted that the lands of the Long-Bell Lumber Company and the Long-Bell Farm Land Corporation in wards 2, 3, and 4 of Beauregard parish are correctly assessed. It is also admitted that 30 per cent. of the lands owned by the Long-Bell Farm Land Corporation, in said parish, is involved in contracts for sale, at an average price of $7 per acre, and the manager of the Long-Bell Farm Land Corporation testified that 50 per cent. of the land owned by that corporation in ward 7 of Beauregard parish is involved in similar contracts, at an average price of $10 per acre.

With respect to the lands of the Delta Land & Timber Company, two reputable witnesses, one a police juror of Beauregard parish, and the other a banker of De Ridder, testified that this company refused to quote a price on its lands in Beauregard parish for the stated reason that its lands were not on the market. One of these witnesses testified that he had asked for the price of the lands in tracts of from 1,000 to 5,000 acres. Trans. pp. 956 to 958 and 1073 to 1075. It is shown by other witnesses that this company refused an offer of $5 per acre for about 1,500 acres of its cut-over land. It is shown that prior to January 1, 1929, the lowest price ever charged for the lands of any one of the plaintiffs was $5 per acre.

With respect to the lands of Peavy-Byrnes Lumber Company, it is shown by the testimony of old citizens of Beauregard parish, who have an intimate personal knowledge of the lands involved in this suit, that said lands are well worth the amount of the assessment. Mr. Paul D. Perkins, who qualified as an expert on soils, fixed the value of the plaintiff's lands in the high lands district of Beauregard parish at $14 per acre in 1,000 acre lots without any selling cost or cost of any nature attached. On the other hand, Col. Sullivan, Mr. Hardtner, and several other owners of large tracts of cut-over lands in other parishes of the state, testified that the plaintiff's lands are not worth $3 per acre.

The testimony is voluminous, but the testimony of the witnesses without interest shows that, if the lands involved herein are subdivided into smaller tracts, they are worth considerably in excess of $4.25 per acre.

The actual selling price of property of a fixed classification, and in a certain neigh-

borhood, where there are, as in these cases, a large number of sales, and contracts for sale, may be considered as fairly representing the value of other property of the same classification in that neighborhood. This is the accepted rule.

Counsel for plaintiffs have filed the opinions of two district judges, one by Judge Porter and the other by Judge Cline. In both of these cases the judges, upon the facts found, followed the case of Lyon Lumber Co. v. Louisiana Tax Commission, 158 La. 990, 105 So. 39. In the Lyon Lumber Co. Case the plaintiff proved that, for two years preceding the suit, its lands had been placed on the market at $3.50 and $4 per acre; that they were advertised for sale, at that price in the newspapers of the four largest cities in Missouri, Tennessee, and this state, without securing a purchaser; that they were offered to the Great Southern Lumber Company at $4 per acre, but, after an inspection of them by that company, the offer was declined. The vice president of the Great Southern Lumber Company testified that the land was not worth over $2.50 per acre. Another witness placed its value at $3.50 to $4 per acre. No direct testimony, whatever, was offered by the defendants as to the land's actual cash value, either as a whole or in small tracts. On this proof it was held that the assessment complained of was based upon speculative value, and it was properly reduced to $3.50 per acre.

In the cases at bar, however, the facts are entirely different. Here, one of the plaintiffs has sold to another of the plaintiffs large tracts of its land at a standard price of $5 per acre, and this vendee has conveyed a large percentage of the land so acquired to individuals, at prices ranging from $20 to $25 per acre. It is further shown that 30 per cent.

of the lands owned by said vendee, in Beauregard parish, when this suit was filed, were under contract for sale at prices ranging from $7 to $10 per acre, and it is the assessment of the lands under contract for sale, as well as lands not involved in such contracts, that this plaintiff contends should be reduced from $4.25 to $3 per acre.

■ It is shown that the lands of the several plaintiffs, in Beauregard parish, fall in the same classification and are of the same general character and value. It is shown that one of the plaintiffs has declined to accept a cash price of $5 per acre for 1,500 acres of its land in Beauregard parish, and it is not shown that this 1,500 acres differs in value, accessibility, or otherwise, from the plaintiff's other lands in said parish. It is clear that the Lyon Lumber Company Case has no application to the facts of this case, and we do not think that the "unit system" can be successfully contended for here, for the reason that the lands of the respective plaintiffs consist of tracts separated by intervening lands, some of the tracts being miles apart. The "unit system" is applied to contiguous lands, with this modification, viz.: If the lands are in the same taxing district, and are owned by a single individual, and are used, occupied, and treated by him as a single tract, although it may contain legal subdivisions, it may be listed and taxed as a single tract. This modification is the rule in Michigan, Nevada, and California. It has not yet been directly recognized by this court. It has been held, in other jurisdictions, that, where unimproved lands are acquired from one owner, in one purchase, and they lie in the same taxing district, they may be considered as a single entity and assessed as a unit.

In this case there is no evidence as to the plaintiffs' titles, and, therefore, there is no

way of determining whether the plaintiffs, or any one of them, holds under one or many titles.

Plaintiffs contend that their lands form a part of their industrial plants, and, since its manufacturing business is a unit, its lands, whether in one body or not, "constitute a single industrial whole," and when lying in the same neighborhood, whether contiguous or not, they should "be assessed as a single unit, in accordance with the rule in the Crowell & Spencer Case, 152 La. 455, 93 So. 678."

What was held in the Crowell & Spencer Case is that the taxing board could not subdivide a large body of land into 40-acre tracts, for the purpose of assessing the timber thereon, and assessing the stumpage value of each 40 acres separately in order to arrive at a classification and valuation of the whole.

The plaintiffs intimate, in their reply brief, that certain oil and gas developments in sections not very remote from their lands, may have influenced, to some extent, the valuation placed on their lands for purposes of assessment and taxation. This seems to be a mere assumption of counsel. It is not alleged and the proof offered does not warrant it. It would be equally unwarranted, but defendants' counsel would be equally justified in intimating that the Delta Land Company preferred to keep its lands out of commerce for a like reason.

In each of the judgments rendered the statutory penalty of 10 per cent. upon the difference between the sum of the assessment and the sum to which the plaintiff sought to reduce it was allowed.

For the reasons stated, we are of the opinion that the judgment in each of the four consolidated cases is correct, and the said judgments are affirmed at appellants' cost.

ODOM, J., takes no part.