No. 4037

Second Circuit

———

ADAMS v. PICKEL ET AL.

———

(July 14, 1931. Opinion and Decree.)

———

J. W. Elder, of Ruston, attorney for plaintiff, appellant.

W. E. McBride, district attorney, of Ruston, and Edward Everett, Jr., of Farmerville, attorneys for defendants, appellees.

McGREGOR, J. This is a suit by the plaintiff for a reduction in the assessment of his property in Union parish for purposes of taxation. The defendants are the Louisiana Tax Commission, the tax assessor, J. E. W. Pickel, the Union parish equalization board, the police jury of Union parish, acting as the parish board of reviewers, Z. C. Rabun, clerk of the court, and F. W. Murphy, sheriff and tax collector of Union parish. The plaintiff is the owner of 3,680 acres of land in Union parish, and on March 21, 1930, made due and timely return of the said land under oath to the tax assessor of Union parish, and in the return he valued it at $4.25 per acre for all local and state assessment and taxation purposes and listed it as cut-over pine land. When this return was thus made the tax assessor refused to accept it but raised it to $7 per acre and classified the land as woodland. Plaintiff took every legal step required of him within the delay allowed by law in protesting against the action of the assessor in raising the said assessment. The Union parish board of equalization, the police

jury of Union parish, sitting as the parish board of reviewers, and the Louisiana Tax Commission all refused to recommend the lower assessment and sustained the tax assessor in the $7 assessment and in the classification of the land as woodland. On December 21, 1930, the tax assessor filed the completed rolls in the offices of the sheriff and tax collector and the clerk of the court. These rolls contained plaintiff's assessment at $7 per acre. In order to prevent the tax assessor from proceeding to collect taxes from him on the basis of the contested assessment, the plaintiff filed this suit, which, under the law, is a summary proceeding. A rule was issued directed to all of the defendants and ordering each of them to show cause on January 19, 1931, why the reduction of plaintiff's assessment should not be granted and why a preliminary restraining order should not be issued. On January 19, 1931, the day set for the hearing on the rule, it was reset for January 26, 1931. On that day the defendants filed exceptions of misjoinder and of no cause or right of action and, with full reservation of all their rights under the exceptions, answered. The exception of misjoinder was sustained as to the clerk, the sheriff and the Union parish equalization board, and as to the other defendants this exception and that of no cause or right of action were referred to the merits.

Put in condensed form, the answer admitted that plaintiff classified his land as cut-over pine land and returned it at $4.25 per acre and that the assessment was raised to $7 per acre and that the land was classified by the assessor as woodland, but alleged that the raise in rate and change in classification were justified by the character and value of plaintiff's land. With the issues as thus made up and joined the case was tried on January 26,

1931, and on February 20, 1931, judgment was rendered rejecting the demands of the plaintiff and allowing 10 per cent of the amount of taxes involved to be paid to the attorney for the defendants. From this judgment the plaintiff is prosecuting this appeal.

## OPINION

The only question to be determined in this case is as to whether the plaintiff's land shall be assessed at $4.25, the value fixed by the plaintiff, or at $7, the value fixed by the defendants. Under the law the assessment as fixed by the defendants is presumed to be correct unless and until the plaintiff introduces satisfactory proof to the contrary, so that the assessment of plaintiff's property as it appears on the tax rolls that were filed in the clerk's office is prima facie proof of its correctness. As a part of the taxation machinery of the state there has been constituted what is known as the Louisiana Tax Commission. This body has the right under the law, subject to the supervision of the courts, to direct and control the tax assessor in the matter of fixing the assessment valuations on all property in the respective parishes. This commission has divided the land of the state into different classifications for assessment purposes—two of which are woodland and cut-over pine. For the year 1930 the commission has decreed that woodland shall be assessed at $7 per acre, in Union parish particularly, and that cut-over pine land shall be assessed at valuations ranging from $4.25 to $5 per acre in the state generally. These values have no reference whatever to any added or speculative value that any land may have on account of being located in or near oil and gas territory. Under the express provision of section 21 of article 10 of the Constitution of 1921, nothing can be added to the

valuations placed on lands for assessment purposes by reason of the peculiar conditions that arise when it is suspected or believed that oil or gas lies beneath the land in any particular territory. The constitution authorizes and the legislature has provided for a severance tax on oil and gas. This is the only way that the state is permitted to tax these minerals and they are taxed only as they are produced. It is not permitted to add to the assessed valuation of land anything "by reason of the presence of oil or gas therein or their production therefrom." To illustrate: Certain land may be worth $5·per acre and assessed at that price. If a new oil and gas field is discovered in the adjacent territory the mineral rights of said land might suddenly become very valuable and might sell for $50 or more per acre. Under the express provision of the constitution nothing could be added to the assessed valuation of the property on this account. There might never be any oil or gas produced from the land in question and this added value might prove to be purely speculative. So that, in the case under consideration if the defendants have added anything to the assessed valuation of plaintiff's land by reason of its proximity to known gas and oil fields the increase is not justified. The defendants do not contend that anything has been added to the assessed valuation on account of the value of the mineral rights, but on the contrary say that the value placed on the land is correct without taking into consideration any mineral rights. This question has been injected into the case by the plaintiff. He does not say at what price the mineral rights are valued by him. He merely testifies that he will take $4.25 per acre for all his land if he is permitted to reserve the mineral rights, and that, therefore, the land should be as-

sessed at not more than that amount. This is not a fair criterion. There may not be an available purchaser for all these separate tracts of land at any price at all and in that event the plaintiff would be safe in saying that he would take $3 per acre for all of it and that, therefore, it should be assessed for that amount.

The real controversy in the case is as to whether the land has been properly classified by the defendants as "woodland." If it has been, then the assessment at $7 per acre fixed by the Louisiana Tax Commission for that class of land must stand, unless it is proved by the plaintiff that the land, independent of how it may be classified, is not worth that amount.

Practically all the land involved was bought by the plaintiff in 1919 for $5 per acre, with all merchantable timber of eight inches in diameter reserved. Since that time the timber has been removed. The first witness for the plaintiff was W. C. Feazel, who had charge of the land before the plaintiff bought it and who looked after it for some time for the plaintiff, though he says he has not seen it for several years nor since the timber was cut and removed. He has no knowledge of the present condition of the land as to whether or not it has been properly classified as "woodland," but he thinks that $4.25 per acre is a fair value for it, exclusive of the mineral rights. The plaintiff's personal testimony is that he would take $4.25 per acre for all the tracts, exclusive of the mineral rights, and that there is not a sufficient growth of timber on the land to justify its classification as "woodland." Mr. R. R. Coleman, witness for the plaintiff, did not testify as to the value of the land. His testimony was that during the course of several years

he superintended the cutting of the merchantable timber on the land for those who owned it. He was not able to say whether there was a sufficient growth of timber on the land at the present time to justify its classification as "woodland." He was fair and impartial and was as favorable to the defendants as to the plaintiff. In addition to this testimony the plaintiff offered the deeds by which he acquired the property for ·$5 per acre. He also offered the assessments of the Frost Lumber Industries, Incorporated, and of Dubach Lumber Company. The Frost Lumber Industries' assessment is as follows: 31,739 acres of woodland at $6 per acre; 49,260 acres of cut-over pine land at about $4 per acre; and 49,260 acres of cut-over swamp land at about $3 per acre. The Dubach Lumber Company's "woodland" was assessed at $7 per acre and its swamp land at $5 per acre. Plaintiff calls particular attention to the assessment of the Frost Lumber Industries as being lower than his and lower than the rates fixed by the Louisiana Tax Commission. This is satisfactorily explained by the assessor who states that this company had secured a reduction in its assessment by virtue of maintaining a system of reforestration and fire prevention in accordance with Act No. 90 of 1922, as amended by Act No. 71 of 1924. This being true, this assessment cannot serve as a criterion for the assessment of plaintiff's land. The assessment of Dubach Lumber Company corroborates defendants' position absolutely in that all of its lands that are classified as "woodland" are assessed at $7 per acre, the rate fixed by the Louisiana Tax Commission.

In its discussion of what constitutes "woodland" the Louisiana Tax Commission says:

"In this classification should be placed all tracts of brush woods that cannot be classed as open land and cannot be classed as timber land, as well as all cut-over lands that have reforested to an extent that renders them susceptible to this classification. Nearly every farm has a small tract of brush woods that is usually unfit for cultivation and has no value as timber. This classification was made in order to describe that kind of property and reforested cut-over not properly classifiable as timber lands."

To offset the testimony of the plaintiff as to the character and value of his land the defendants produced eleven witnesses. G. R. Hicks was acquainted with five or six hundred acres of the land and judging from sales of similar and adjacent tracts he was of the opinion that it was worth from $10 to $12.50 per acre. He also testified that there was a considerable amount of timber left and growing on the land, sufficient to classify it as "woodland." L. L. Pardue testified that he was well acquainted with one tract containing one hundred twenty acres that is "woodland" and worth $10 per acre. W. Boyd Wilhite testified that he was acquainted with two hundred acres that is "woodland" and worth $10 per acre. Luther Allen was acquainted with five hundred acres and considered it "woodland" and worth from $12 to $15 per acre. W. H. Harris, another witness for the defendants, did not know any of the land and had never been on any of it. His general idea was that all except the swamp land would be worth about $6 per acre. T. A. Skains is familiar with several hundred acres and considered it "woodland" and cheap at $10 per acre. A. T. McMoy is familiar with several hundred acres and considers it "woodland" and worth $10 to $12 per acre. J. E. W. Pickel, the tax assessor, has been over all the land, has examined it personally with a view to assessing it

and considers it all "woodland" and well worth $7 on the average for assessment purposes. He says it is better land than that assessed to the Frost Lumber Industries. His testimony is that he assessed it at the same price as he did all similar land in the parish; that to lower this assessment would be a discrimination against all other land owners in the parish; and that, basing his statement on his actual knowledge of recent sales all over the parish, plaintiff's land as a whole is worth from $10 to $15 per acre on the market. Joe Hicks knows about five or six hundred acres of the land and considers it worth $10 per acre, but does not think much of the timber. Frank Pardue is familiar with about one thousand acres of the land and considers it "woodland" and worth from $7.50 to $10 per acre. Cooper Templeton knows about one hundred acres but does not know much about its value.

It is objected that the character of testimony produced by the defendants is not admissible in a case of this kind; that it is not proper to introduce testimony as to what isolated tracts are worth or would sell for, but that the only kind of testimony that is admissible and proper is testimony as to what all of the land is worth and would bring at a cash sale. In support of this position the plaintiff relies on the case of Lyon Lumber Company v. Louisiana Tax Commission, 158 La. 990, 105 So. 39. The rule laid down in that case and relied upon by the plaintiff is recognized as sound and correct, but it is not applicable here. Plaintiff's land is not one continuous tract. It consists of about twenty-five separate and distinct tracts, not in any sense continuous or contiguous. Nine of these tracts are forty acres each; five or more of them are eighty acres each. The land is situated in two different townships and three different ranges. In the recent case of Peavy-Byrnes Lumber Company v. Louisiana Tax Commission, 132 So. 507, 509, the Supreme Court, in passing on a similar situation, said:

"It is clear that the Lyon Lumber Company case has no application to the facts of this case, and we do not think that the 'unit system' can be successfully contended for here, for the reason that the lands of the respective plaintiffs consist of tracts separated by intervening lands, some of the tracts being miles apart."

A plat of all of plaintiff's land does not even suggest one continuous tract. On the contrary, it shows twenty-five tracts widely separated. If plaintiff had so desired it is probable that he could have rendered an assessment in two or three classifications and that some of it might have been listed as "cut-over pine land," but he chose to list it all under this classification as an average. Since he chose to classify it all together, the assessor did the same thing, but he listed it all as "woodland" on the average rather than as "cut-over pine land." Not only has the plaintiff failed to show by a preponderance of evidence that his land should be classified as "cut-over pine land" and that it is worth less than $7 per acre on the average, but the defendants have proved by a preponderance of evidence that it is properly classified as "woodland" and that it is worth more than $7 per acre on the average and that it has been properly assessed at $7 per acre.

A careful reading of the testimony of the defendants' witnesses fails to disclose that the proximity of the land to oil or gas territory has enhanced the selling price of the land. Practically all the testimony indicates that the valuations placed on the land are for farming purposes in

small tracts. They are isolated and widely separated and well suited for small farm homes. The value put on the land by the defendants being considerably lower than what was proved to be its average market value in small tracts such as it consists of and being the regular schedule established by the Louisiana Tax Commission and the preponderance of testimony being in favor of the land being classified as "woodland" instead of "cutover pine land," the judgment of the lower court will have to be affirmed.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be and it is hereby affirmed, and that the plaintiff pay all costs of both courts.