ODOM, J.
 

 Plaintiff owns 69,071 acres of cut-over pine lands in the parish of St. Helena which it listed for assessment in 1930 at $3 per acre, or a total valuation of $207,213. The assessor, with the sanction and concurrence of the tax commission, the police jury and the board of reviewers, raised the assessment to $355,441, or a valuation slightly in excess of $5 per acre. Plaintiff brought the present suit to have the assessment reduced to the amount as originally listed by it.
 

 There was judgment reducing the assessment fixed by defendant to $276,286.28, or $4 per acre, and ordering defendants to pay all court costs. As the reduction made was more than 25 per cent, of the reduction sought by plaintiffs, the demand of defendants $or 10 per cent, attorneys’ fees was rejected. The attorney for the tax collector was awarded 5 per cent, of the tax involved as a fee, the same to be paid when the tax is collected.
 

 The defendant appealed, and plaintiff has asked that the judgment be so amended as to fix the valuation at $207,213, as prayed for.
 

 1. There are no exceptional features involved in this case. Under the Constitution, statutes, and the settled jurisprudence of the state, the present actual cash value of lands is the proper basis for assessment and not possible future values. Article 10, § 1, Constitution of 1921; Act No. 140 of 1916, as amended by Act No. 211 of 1918; Morgan’s La. Ry. Co. v. Board of Reviewers, 41 La. Ann. 1156, 3 So. 507; Manson v. Board of Levee Commissioners; 154 La. 995, 98 So. 555;
 
 *113
 
 Lyon Lumber Co. v. La. Tax Commission, 158 La. 990, 105 So. 39; Bodcaw Lbr. Co. v. Boone, Assessor, 171 La. 556, 131 So. 669.
 

 Therefore the only question involved is one of fact, and that relates to the present actual cash value of plaintiff’s lands.
 

 2. Plaintiff’s land was originally timbered with long leaf and yellow pine, which has all been cut, leaving it entirely denuded. Some of the witnesses say there is merchantable timber on portions of it suitable for cross-ties, but they do not estimate its value. Such small timber as there is on the land is so far from transportation facilities that it cannot be handled to advantage; the cost of cutting and hauling being equal to, if not greater than, the market price of the ties. Some of the land has no second growth of pine upon it, but is practically bare. On portions of it young pine from 12 inches to 12 feet high is growing, which will in time become valuable. But, at present, the acreage as a whole has no timber of value upon it.
 

 St. Helena parish is sparsely populated, having only about 8,000 population,- with only one incorporated town with 300 people. There is only one railroad in the parish, and that is a spur of the New Orleans N. & N. Railroad, located in the southern portion of the parish. There are no factories or other industrial enterprises in the parish, and there is testimony which indicates that the population is decreasing, the reason given by one witness, a prominent citizen, being that the people get rich there and leave. The lands are good for grazing purposes, and, but for the fact that the territory is quarantined because of its infestation with the cattle tick, they would be highly valuable for cattle raising. The land is undulating and well drained. It is not highly fertile, hut is productive. Corn, cotton, potatoes, cane, vegetables of all kinds, and strawberries can be successfully grown. The population of the parish is composed chiefly of farmers who cultivate small areas and seem to be prosperous. They all own cattle which live on the range, and some of them survive through the winter season without extra feed. So much as to general conditions.
 

 3. Plaintiff’s witnesses all say that the land, taking the entire acreage as a whole, is not worth on an average more than $3 per acre. Some of them say it is not worth that much.
 

 Plaintiff has offered, and was offering at the time this case was tried, to sell the entire tract at $3 per acre; but had received no bids. The, general manager of the Great Southern Lumber Company, which has large holdings in Livingston parish, which adjoins St. Helena, on the south, said his company had declined to purchase the entire acreage at $3 per acre.
 

 Mr. W. L. Mitchell, who is engaged in the tie business, testified that he had inspected some 5,000 or 6,000 acres of plaintiff's land, and that in his opinion it was not worth more than $2 or $3 per acre, although he purchased 2,000 acres from it at $8 per acre. He says some of the land he purchased had not been cut over, and that he bought for the timber.
 

 Mr. Sparker, Mr. Gulley, Mr. Hollister, Mr. Reimers, and Mr. Hatcher, all connected with the plaintiff company, testified that the lands were not worth more than $2 or $3- an acre, and that they had offered them for sale at $3, and that no offer had been made.
 

 
 *115
 

 4.
 
 The testimony of these witnesses shows that, taking all the lands in St. Helena parish, approximately 70,000 acres, owned by plaintiff, and considering it aá one body or as a whole, they could not be sold, on an average, at more than $3 per acre, the value placed upon them by plaintiff for assessment purposes.
 

 Without in any sense discrediting their testimony, we must bear in mind that they are men who are now or have been engaged in the timber and lumber business. Ordinarily, such men base their estimates of the value of land upon the amount of timber upon it and its value. They usually attach little value to land itself, and rarely take into consideration what their lands would be worth if sold in small tracts. They usually deal in large tracts of land, and their values are based upon what the total acreage will bring if sold in lump as one tract. Those who have acquired immense acreages for the timber alone and who cut the timber, and then have no further use for the land, usually offer the lands for sale in bulk or as one entire tract. Their purpose is to dispose of all their holdings in one sale. To succeed they must find a purchaser who is willing and able to purchase the entire acreage offered.
 

 In the case at bar, plaintiffs have offered to sell their entire holdings at $207,-213, or an average price of $3 per acre. They contend that their lands should be considered, for assessment purposes, as one tract, and that its cash value is what the entire acreage would 'bring on the market.
 

 Cooley on Taxation (3d Ed.) p. 756, says: “In valuing land which is to be assessed as one parcel, the estimate should be of the whole, and not parts separately and then added together.”
 

 This rule is approved in Crowell & Spencer Lbr. Co. v. Word, Assessor, 152 La. 455, 93 So. 678, and again in Lyon Lbr. Co. v. Louisiana Tax Commission, supra.
 

 But these cases are distinguishable from this one. In the Crowell & Spencer Lbr. Co. Case it was held that the taxing bodies could not subdivide a large body of land into smaller tracts for the purpose of assessing the timber thereon and assess the timber on the smaller tracts separately in order to arrive at a classification and valuation of the whole.
 

 In the Lyon Lbr. Co. Case there was involved a tract of 50,000 acres of cut-over land, and, said the court, “The land of plaintiff lies practically in one body.”
 

 The situation is different here. There was filed in evidence, and we now have before us, a map qf St. Helena parish showing in colors the lands owned by plaintiff. Instead of these lands being in one body or practically in one tract, they are in separate tracts scattered all over the parish. There are no less than thirty separate parcels ranging in acreage from forty acres up. Plaintiff owns land in literally every section of the parish except one, the northeast corner. The bulk of the acreage is in the southern third of the parish, but there is no large, solid body anywhere. The tracts are widely separated; some of them being miles apart.
 

 In the case of Peavey-Byrnes Lbr. Co. v. La. Tax Commission, 171 La. 939, 132 So. 507, it was held that the “unit system” of valuation was not applicable to cut-over timber lands consisting of tracts separated by intervening lands.
 

 
 *117
 
 Situated as plaintiff’s lands are, separated into different tracts scattered throughout the parish, the unit system of assessment is not proper, nor is it correct, under such circumstances, to say that the actual cash value of the lands is the price at wíiieh the entire .acreage could he sold if offered in lump.
 

 Plaintiff’s holdings in St. Helena parish are not, and so far as the testimony shows, have never been considered as one tract. In the ease of Lyon Lbr. Co. v. Tax Commission, supra, we said: “The question in this case is not ‘what would this 'or that part of it sell for, if separated from the rest, but what would the property as it is — as the owner actually holds it — sell for at a fair private sale,’ ” citing two cases from other jurisdictions.
 

 There the court had before it an assessment involving 50,000 acres of land practically in one tract. Here there are numerous tracts widely separated. As to the particular point now being considered, that case is not pertinent.
 

 5. Defendant called quite an array of witnesses, among them being the assessor, the president of the police jury, one or two members of the parish board of reviewers, a banter, and a number of farmers. These were, residents, some of them having lived in the parish many years. They lived in different sections of the parish, and all were landowners. Some of them
 
 owned
 
 land adjoining the different tracts owned by plaintiff. We shall not discuss their testimony in detail as the record is voluminous. It is sufficient to say that they were familiar with conditions and land values in their respective localities.
 

 Their estimate'of the value of these lands varies from $4 to $10 per acre. None of them were familiar with all the lands owned by plaintiff, but, as a rule, based their estimates on the value of plaintiff’s lands either adjoining theirs or near by. The lands owned by plaintiff, with which these witnesses were familiar,- were all susceptible of cultivation. From the testimony as a whole we understand that only about 1,000 acres of plaintiff’s land is marsh or wet; the major portion of it being tillable. The value which these witnesses place on the land is not speculative, but what they considered its present value for agricultural and grazing purposes. The assessor testified that no lands in the parish, except a few acres of marsh, was assessed at less than $5 per acre.
 

 The trial judge fixed value of plaintiff’s lands for assessment purposes at $276,286.29.
 

 The testimony as-a whole does not warrant a disturbance of his findings. The correctness of the judgment in other respects seems to be conceded.
 

 The judgment appealed from is affirmed, with all costs.