The case of Brewer v. Forest Gravel Co., Inc., is on all fours with the one at bar. See, also, Wright et al. v. Imperial Oil & Gas Products Co., 177 La. 482, 148 So. 685.

Counsel for defendants say in their brief that the Brewer Case is distinguishable from this one because there the controversy was between the lessor and lessee as to who should pay the severance tax, and that the state was not involved in the litigation. The fact that the state was not involved in that litigation does not in any sense distinguish that case from this one in principle. The question there was whether the owner of land from which natural resources are severed under a lease contract, stipulating that the lessee should pay to the lessor a certain price per unit of the resource severed, should pay the severance tax. We held that the tax was due, not by the owner of the land, but by the lessee who actually severed the resources from the soil. The identical question is involved in the case at bar, and we reaffirm our ruling in the Brewer Case.

The lease contract in this case provides that: "Not later than the 10th day of each calendar month during the life of this lease, lessee shall furnish to lessor a detailed statement of all sand, gravel and over-burden mined and loaded during the preceding month, listing each car, number and weight, and shall make payment at the same time, all

rentals or royalties due for such preceding month."

Counsel for appellants argue that, inasmuch as the rentals were to be paid only at the end of each month, the lessee would not become the owner of the resources severed until paid for and removed from the premises.

We are not called upon to say what effect as to ownership that stipulation in the lease contract had as between the parties themselves. With that we are not concerned. We have held that, under the act which requires the payment of a severance tax, the lessee or party who severs the resources from the soil becomes the owner of them the moment that the severance takes place, and that the tax is due when the ownership springs into existence.

For the reasons assigned, the judgment appealed from is affirmed.

159 So. 316

## FROST LUMBER INDUSTRIES, Inc., v. PICKEL, Assessor, et al.

No. 33106.

Jan. 7, 1935.

Rehearing Denied Feb. 4, 1935.

T. J. Gaughan, of Camden, Ark., H. G. Fields, of Farmerville, and Oliver & Digby, of Monroe, for appellant.

Walton E. McBride, of Ruston, for appellees.

ROGERS, Justice.

The Frost Lumber Industries, Inc., was the owner on January 1, 1931, of certain standing timber and 143,183 acres of land situated in Union parish. Within the time provided by law, the corporation returned its property for assessment purposes. The return classified the lands into agricultural, woodland, and cut-over lands, and carried a separate valuation for each classification. The total valuation placed on the lands in the return was $580,351. This was at the rate of about $4 per acre. The taxing authorities, without classifying the lands and merely designating them as "miscellaneous lands," fixed their total valuation at $809,810, representing an in-

crease in the valuation of $229,509. This was at the rate of about $5.65 per acre.

The Frost Industries, Inc., then brought this suit to compel the reduction of the assessment on its lands to the valuation at which it had returned them. The court below rejected plaintiff's demand, and condemned plaintiff to pay an attorney's fee of 10 per cent. as a penalty. From this judgment plaintiff has appealed.

Some time after its original petition was filed, plaintiff filed a supplemental petition, in which it alleged that on December 19, 1932, the state tax commission had entered an order reducing the assessment to the valuation returned by plaintiff and had directed the tax collector to make the reduction; that the entire matter had been compromised and adjusted; and plaintiff prayed for judgment recognizing the reduction in assessment and the payment thereunder as a complete discharge for all taxes due.

Defendants objected to the filing of the amended petition, but their objection was overruled. Defendants then answered the petition, denying the allegations thereof, and setting up certain alternative pleas.

We do not find it necessary to pass upon the many incidental questions raised by the numerous petitions, exceptions, motions, and objections appearing in the record. On the merits of the case, two distinct propositions are submitted for decision, viz.: Whether the alleged action of the state tax commission of December 19, 1932, is conclusive; and whether plaintiff has proved that the assessment placed on its lands by the taxing authorities is excessive.

It does not appear that any motion or resolution was passed by the tax commission or that any order was entered on its records, reducing plaintiff's assessment. The only evidence offered by plaintiff to show such reduction is a letter dated December 19, 1932, addressed to the sheriff of Union parish, and signed on behalf of the commission by P. O. Moss, state assessor. The letter, which was admitted over defendants' objection, shows on its face that it was written pursuant to the provisions of Act No. 120 of 1918.

The testimony of E. S. Murrell, secretary of the state tax commission, shows that two of the three members of the commission were present at the special meeting, and that the chairman of the commission directed that the reduction be made.

Plaintiff also offered in evidence another letter written on behalf of the tax commission by P. O. Moss, state assessor. The letter is dated February 18, 1933, and is in reply to a letter of inquiry and protest addressed to the commission by defendants' attorney on January 21, 1933. In this letter, Mr. Moss states that the reduction in plaintiff's assessment was made after a visit to the office of the commission by the then parish assessor, who recommended it, and also to effect a compromise, the compromise consisting in the prompt payment by plaintiff of the taxes for 1931 and an agreement on plaintiff's part to pay taxes for 1932 prior to March 1, 1933.

It is not necessary for us to determine the validity of the order reducing plaintiff's assessment or to pass upon the constitutionality of Act No. 120 of 1918 under the authority of which the order was issued. Plaintiff con-

cedes that the statute conferred no such authority upon the tax commission, but plaintiff contends that under the general laws the commission was vested with the power to revise its assessment at any time prior to the payment of the taxes. However, plaintiff has not referred us to any general law in support of its contention. No such claim was made in the letter written on behalf of the tax commission. On the contrary, the writer of the letter expressly declared that the reduction in plaintiff's assessment was made under the provisions of Act No. 120 of 1918.

. In State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, 130 So. 46, this court described the method of making the assessments for the collection of taxes and the extent of the power of the tax commission in regard thereto. As pointed out at page 215 of the opinion in 171 La., 130 So. 46, 47: "The method by which the assessments are made for the collection of all taxes, state and local, is that the assessor in each parish throughout the state, and the board of assessors for the parish of Orleans, prepares a tentative assessment roll, which, after being reviewed and revised by the parish board of equalization, according to the provisions of Act No. 231 of 1920, is submitted to the tax commission for approval. The tax commission may make such changes in the valuations as the commission sees fit before approving the rolls; and, when they have been thus approved by the tax commission they become the assessments for the collection of state taxes, and form the basis on which the percentage (not below 25 per cent.) must be adopted for the collection of municipal and parochial and other local taxes."

■ And in the recent case of Southern Amusement Co., Inc., v. City of Jennings, 180 La. 800, 157 So. 720, this court specifically held that, after the tax commission has reviewed and approved the assessment rolls and permitted them to be filed in the recorder's office and with the tax collector, the tax commission cannot thereafter change the valuations. The assessments have become the assessments for the collection of taxes, and the rolls are final, subject to the right of any taxpayer within the time prescribed to apply to the courts for a revision of his assessment.

■■ But plaintiff contends that, the tax commission having seen fit to assume the power of revision and having under such assumption reduced its assessment, the effect of which was to compromise a pending lawsuit, the tax commission cannot now be heard to say that it was without authority to do what it had done.

A sufficient answer to the contention is that there is nothing in the record to show that the tax commission ordered plaintiff's assessment reduced, if it did order it reduced, as the result of any compromise entered into between plaintiff and the commission. Plaintiff's contention rests solely upon the statements contained in the letter of February 18, 1933, addressed by P. O. Moss, state assessor, to defendants' attorney. The reference in the letter to a compromise amounts to nothing more than the writer's statement of his recollection of what took place. No motion or resolution was adopted by the tax commission proposing a compromise or accepting an offer to compromise; nor was any order issued by the tax commission based on any compromise settlement. And it is clear that

plaintiff's promise to promptly pay its taxes, if plaintiff made such a promise, would not have been sufficient consideration to support a compromise agreement, since such a promise on plaintiff's part would merely have bound plaintiff to do that which the law required it to do.

We find nothing in the letter of February 18, 1933, which in any wise affects the respective rights of the parties litigant.

█ Under constitutional and statutory provisions and the jurisprudence of this state, the present actual cash value of lands, and not possible future value, is the proper basis for assessment. Natalbany Lumber Co. v. Louisiana Tax Commission, 175 La. 110, 143 So. 20.

█ The assessment of property for taxes and the modes adopted for determining its value are presumed to be correct until the taxpayer makes satisfactory proof to the contrary. Frost Lumber Industries, Inc., v. Louisiana Tax Commission, 174 La. 396, 141 So. 8.

█ The trial judge did not think that the proof submitted by plaintiff was sufficient to overcome the presumption that its lands were properly assessed, and our examination of the record has not disclosed anything that would warrant us to disturb his findings.

A number of witnesses were called by, and testified on behalf of, the parties. Their testimony, as is usual in cases of this character, is conflicting. It is to be noted, however, that no officer or representative of the plaintiff company testified that the property was not worth the amount for which it was assessed. The testimony relied on by plaintiff to over-

come the presumption of correctness attaching to the assessment is not convincing. Few of plaintiff's witnesses knew anything about the lands in Union parish and their values. These witnesses testified as to values of lands in other parishes of this state and in the state of Arkansas. One witness, C. H. Murphy, owning 2,000 acres in Union parish which he was holding as a timber proposition, testified that plaintiff's land was worth only $2 per acre. He stated, however, that he would not sell his land at that price or for $5 an acre, that he would sell for around $6 an acre, and that his land was assessed for $7 an acre.

The defendants placed on the stand a number of witnesses who were familiar with plaintiff's lands and values and also with the general conditions and land values in Union parish. All these witnesses testified that plaintiff's lands were worth more per acre than the figure at which they were assessed. Defendants also offered in evidence deeds covering all purchases of lands made by plaintiff for a few months prior and subsequent to January 1, 1931. All these deeds show that plaintiff paid from $7 to $15 per acre for the lands which it purchased. Again, plaintiff's lands were assessed for 1931 as "miscellaneous lands." No complaint of this classification is made by plaintiff in its pleadings. The record discloses that 165,763 and 23,080 acres of miscellaneous lands belonging to other taxpayers were assessed respectively at $5.851 per acre and $6.973 per acre, whereas plaintiff's 142,-683 acres of miscellaneous lands were assessed at $5.667 per acre. Thus it appears that plaintiff's lands were assessed at a lower figure than the same class of lands belonging to other taxpayers.

Plaintiff complains of the allowance of attorney's fees by the court below. Plaintiff concedes that section 56 of Act No. 170 of 1898 provides for the allowance of a fee of 10 per cent. of the tax to the attorney representing the tax collector, but contends that the statutory provision is inapplicable when the tax collector is represented, as he is in this case, by the district attorney and not by a special attorney appointed by the Governor.

It appears that for the past several years there has been no regularly appointed attorney for the tax collector of Union parish, and the district attorney has been representing him in this class of work. The defense of the present suit was committed to the district attorney by the Attorney General.

In Hayne v. Assessor, 143 La. 697, 79 So. 280, this court held that the allowance of an attorney's fee in a case of this kind was proper, though the attorney was the district attorney. It is true that the decision in that case was rendered while article 125 of the Constitution of 1913 was in effect, allowing the district attorney to receive fees in certain cases, whereas under article 7, § 59, of the Constitution of 1921, it is provided that the district attorney shall receive a salary from the state, which is fixed, and also such additional salary as the Legislature may prescribe to be paid by the parishes within his judicial district, but the reasoning of the court is pertinent here.

In Hayne v. Assessor, this court said, at page 711 of 143 La., 79 So. 280, 284: "The im-

plication from the statute quoted [section 56 of Act No. 170 of 1898], as we understand it, is that the compensation is to be allowed for the benefit of any attorney at law who successfully represents the interests of the state in any proceeding, for the collection of a tax or the cancellation or reduction of an assessment which obstructs and delays such collection."

The constitutional provision prohibiting district attorneys from receiving fees of any kind was intended, it seems to us, to prevent district attorneys from receiving any compensation other than their salaries for the services which under the law they are required to render to the state or any of its agencies. We do not understand that the district attorneys throughout the state are ex officio attorneys for the tax collectors within their respective districts.

Act No. 170 of 1898, § 56, declares, in effect, that a fee shall be taxed as costs for the benefit of the attorney who successfully represents the tax collector in a suit which delays the collection of a tax, and we see no reason why the fee thus accruing to the attorney, whether he be the district attorney or another, is not within the terms of the statute. Such a fee is not payable out of the public fisc and, when collected, cannot be considered in any sense as compensation paid the district attorney by any of his official clients.

For the reasons assigned, the judgment appealed from is affirmed.