GULF, COLORADO & SANTA FE RAILWAY COMPANY v. MEENTZEN BROS.

Decided November 25, 1908.

**1.—Railway—Fire from Engine—Negligence—Presumption.**

When sparks from a locomotive ignite property along its track a presumption of negligence arises, and the injured party is entitled to recover unless the railroad company shall prove that the locomotive was provided with the best approved apparatus for preventing the escape of fire and was properly operated. Proof of the ignition of the property by sparks from a locomotive makes a prima facie case of negligence which must be rebutted by the railroad company.

**2.—Same—Oil Burning Locomotive—Negligence—Insufficient Evidence.**

In an action against a railroad company for damages alleged to have been caused by sparks from an oil burning locomotive, evidence considered, and held insufficient to support a verdict against the company.

**3.—Same—Extinguishment of Fire—Duty of Railroad Employes.**

In the absence of evidence that a fire was caused by the negligence of a railroad company, its employes are under no legal obligation to assist in extinguishing the same.

Appeal from the Sixtieth Judicial District, Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*J. W. Terry* and *F. J. Duff*, for appellant.—In a case charging the defendant with negligently having destroyed property by fire escaping

from its engine, it is necessary for the plaintiff, before he is entitled to have the facts submitted to a jury, to prove affirmatively that the fire was started by sparks coming from or emitted by the engine of the defendant. This affirmative proof may be either direct or circumstantial, but the cause of the fire must be established or the prima facie case is not made and none of the facts should be submitted to the jury. International & G. N. Ry. Co. v. Timmermann, 61 Texas, 660; Missouri Pac. Ry. Co. v. Cullers, 81 Texas, 395; Missouri Pac. Ry. Co. v. Bartlett, 69 Texas, 83.

The court erred in not giving the special charge requested by the defendant, which is as follows, to wit:

"You are instructed that, although you believe from the evidence that the fire which destroyed plaintiffs' property was caused by sparks from the engine of the defendant company, yet, if you further believe from the evidence that said engine at the time was in good condition, was an oil-burning engine, and was equipped as such engines are usually equipped, and was being properly handled as such, then you are instructed that the plaintiff has failed to show any negligence which would make the defendant liable, and you will, therefore, return a verdict for defendant." St. Louis S. W. Ry. Co. v. Lindley, 29 S. W., 1101; Galveston, H. & S. A. Ry. Co. v. Horne, 69 Texas, 646; Elliott on Railroads, sec. 1224.

*Greer, Minor & Miller,* for appellees.

Fly, Associate Justice.—This is a suit instituted by appellees to recover damages resulting from the destruction of fences and trees by fire alleged to have been started by sparks from a locomotive belonging to appellant. The grounds of negligence were that appellant was using an old and defective engine with inadequate appliances to prevent the escape of sparks; was using a freight engine on a passenger train, and that the train was being operated in a dangerous and negligent manner and was being run at excessive speed against a high wind. It was also alleged that grass and weeds and other combustible matter had been permitted to accumulate on the right of way, which was ignited by the sparks and the fire spread to appellee's land, and that the section men employed by appellant passed along the track shortly after the fire began, and, although requested to stop and assist in arresting the progress of the fire, refused so to do. The cause was tried by jury, and resulted in a verdict and judgment for appellees in the sum of $600, with interest at six percent per annum from the date of the fire.

The two Meentzens, the appellees in this case, swore that about 11 o'clock on the morning of December 20, 1904, they were at their home about one-half a mile distant from where the fire originated and observed a passenger train pass on appellant's railroad which runs across the southwest corner of their tract of land. It was making a little noise which they thought was unusual—"clanking a little, like something was loose or something." It was going very fast, and there was a very high wind from the south. About four minutes after the train had passed they discovered a little smoke about a half mile from them and they

went to the place and fought the fire and sought to arrest its progress. The fire seemed to have originated about fifty feet from the track in appellee's orchard. The earth was very dry and the fire spread rapidly. While they were fighting the fire at a point about 500 feet from the track a handcar passed on which were one white man and four negroes, and they called to them to stop, but no heed was given to the call. It was not known whether the men on the car heard or not, or whether they saw appellees, although one of the appellees swore that the white man was looking towards them and that witness believed he saw them.

Appellees also introduced a candy man named C. M. Dodd, who swore that he had used oil burners for about eighteen months, and used oil as fuel, and that he gave his attention "early in mornings and late in evenings to looking after the boiler." He stated that he had a forty-horsepower boiler and carried "100 pounds of steam on it for cooking purposes and heating the hotel." He had a smoke-stack thirty-five feet in height, sixteen inches in diameter, which extended about four or five feet above the hotel. He was asked if he had ever observed sparks coming out of the smoke-stack, and he replied: "On one or two occasions I remember very distinctly I was out there about eight or nine o'clock one morning; I live about the second house from the boiler-room; we had about 100 pounds of steam—about ninety-five pounds of steam—and we were pushing it up—had the steam gauge wide open and the oil wide open; there was quite a bit of smoke coming out, and I noticed two or three sparks coming out—looked like scales out of the stack; one of them lit right in front of my yard and the other one right on the corner of my front porch, and I took a broom and knocked it off, and it lighted the grass; that was about 80 feet from the smoke-stack." Cross-examination: "The pieces that come out looked like pieces of scale out of the stack. I can't say there is anything in oil that would make it spark; I couldn't tell you whether there is anything in the combustion of oil to make sparks or not—not to my knowledge I wouldn't say there was anything."

That testimony was introduced in anticipation of the defense that the locomotive was properly equipped with an oil burner, and that appellant was using oil as fuel. Appellees proved damage from the fire.

One witness introduced by appellees and a number introduced by appellant testified that it becomes necessary at intervals, while locomotives using oil as fuel are running, to force sand through the flues and out the smoke-stack in order to remove the dirt and soot. That process would produce sparks. Appellees' witness swore that he had never seen the sparks which follow the sanding process go to a greater height than fifteen or twenty feet, and then they go out. This was corroborated by all the witnesses of appellant, except that the height to which sparks would go was placed at ten to fifteen feet, and all of them swore that they had never known a fire to be communicated by sparks from an oil-consuming locomotive. The engine used by appellant on the occasion of the fire was one properly equipped with an oil burner and was using oil as fuel. It was proved, without contradiction, that the faster an engine goes the less danger there is from sparks. The sanding of the flues is done on passenger trains every ten or twelve miles. The engine used on the day of the fire was properly equipped, and was suitable for pulling

a passenger train. A number of expert railroad men swore that it was not possible for an oil-burning engine running against a stiff wind to throw out sparks sufficient to set fire to dry grass fifty feet from the track. It was further testified that oil-burning engines, properly equipped, are safer than those with coal burners with the best spark arresters. All the witnesses swore that they had never known a spark from an oil-burning engine to reach the ground.

It is the law in Texas, in cases of this character, that when sparks from an engine ignite property along the track, a presumption of negligence arises, and the injured party is authorized to recover for the resulting damages, unless the presumption of negligence is removed by the railroad company. In other words, proof of ignition of the property by sparks from a locomotive makes a *prima facie* case of negligence which must be rebutted by the railway company. In the case of Texas & Pac. Ry. v. Levine, 87 Texas, 437, the Supreme Court states that when proof is made of property being destroyed by fire started by sparks from an engine, the injured party should recover, "unless the railroad company shall prove that its engine was provided with the best approved apparatus for arresting sparks and preventing their escape, and properly operated." The basis upon which the foregoing proposition rests, however, is proof that the fire was caused by sparks from an engine.

In cases of fires along railway tracks it is seldom that the sparks are seen to fall upon the grass or other combustible material, and naturally circumstantial evidence must usually be depended upon to make out a case. Usually those circumstances are the passage of a train, smoke or sparks or both issuing from the engine, the ignition in a short time of the property, and its destruction. In this case, however, the whole evidence is to the effect that an engine passed, no smoke or sparks were shown to have been emitted, nothing but a high wind, the grass on fire a few minutes after the engine passed, the spread of the fire, and destruction of property.

It is said by the Supreme Court in International & G. N. v. Timmerman, 61 Texas, 660: "The general rule may be fairly stated to be, under the present state of the authorities, that where the property is destroyed by fire along or near the railroad track, if it be affirmatively shown as a matter of fact that the fire did actually occur from sparks of fire emitted from the locomotive engine, then the burden, after such affirmative proof is made, rests on the railroad company to show that there was in fact no negligence on its part in causing the fire." In order to raise a presumption of negligence there must be affirmative proof of the burning by the railroad company. There was no attempt to show that no one passed near the field just before or at the time of the fire, although it appears that there was a public road along the railroad very near the point at which the fire originated. One of the appellees swore that the public road was right where the fire occurred and that he had seen at least three men pass along there that morning. It does not appear that the engine was going uphill or laboring at the time so as to cause the emission of sparks. No evidence was adduced showing other fires had occurred in the vicinity or for that matter anywhere along the line. Nothing appears but the

bare facts that a train passed and shortly afterwards the grass was on fire. There is authority, however, to the effect that the finding of fire near the track in a short time after a train passed is sufficient to throw the burden upon the railway company of showing that its engine did not start the fire or, if it did, the company was not guilty of negligence. St. Louis, I. M. & S. Ry. v. Coombs (Ark.), 88 S. W. 595; St. Louis, I. M. & S. Ry. v. Dawson (Ark.), 92 S. W., 27; Union Pac. Ry. v. DeBusk (Colo.), 20 Pac., 752.

This case of meagre circumstances was met by uncontroverted evidence that sparks from oil-burning locomotives never ignited grass, that they never reached the ground in a live or burning state, and that it was utterly impossible for grass to be ignited by sparks from an oil-burning locomotive at a distance of fifty feet from the track. In addition, it was shown that the engine was being properly operated and was equipped with all the latest approved appliances used on oil-burning engines, and that such engines were much safer than coal-burning engines with the most approved spark arresters.

The fire was shown to have begun outside of the right of way on appellees' land, and there could be no issue as to whether or not combustible matter was left on the right of way of appellant.

The attacks on the charge of the court cannot be sustained.

The employes of appellant, even though they heard the cries for help made by appellees and knew of the existence of the fire, were under no obligation which bound appellant to assist in arresting the fire, unless it appeared that appellant's engine had set fire to the property. (Missouri Pac. Ry. v. Platzer, 73 Texas, 117.) The evidence clearly showed that most of the damage occurred before the section men passed and the fire was then at least 500 feet from the railroad.

Because the great preponderance of the evidence is against the verdict of the jury the judgment is reversed and the cause remanded.

*Reversed and Remanded.*