QUANAH, ACME & PACIFIC RAILWAY
COMPANY, Appellant,

v.

Billy B. HAND, Appellee.

No. 8286.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 7, 1972.

Rehearing Denied Sept. 5, 1972.

Howard Traweek, Matador, Jim W. Sowell, Quanah, for appellant.

Tom Hamilton, Plainview, Gibbins & Spivey, Broadus A. Spivey, Austin, for appellee.

REYNOLDS, Justice.

Billy B. Hand recovered a judgment, entered on a jury verdict, decreeing the Quanah, Acme & Pacific Railway Company to be liable for the replacement cost of his farm building destroyed by fire allegedly started by sparks emitted from the railway's train. Reversed and remanded.

Hand's suit is based on the contention that sparks emitted from the railway company's train started a fire in combustible matter accumulated in the railway right-of-way that spread to his land and burned his building. The railway company denied liability and takes the position that the fire started from an electric fence or from some other source on Hand's property and destroyed the building before it reached the railway right-of-way. The jury, in response to the special issues submitted, found that the railway company negligently failed (1) to keep its right-of-way free from combustible material, (2) to keep a proper lookout for sparks emitted by its train, (3) to keep its train from throwing sparks into the right-of-way, and (4) to adequately and properly inspect its right-of-way; found that each negligent act was a proximate cause of the occurrence in question; and further found that the replacement cost of the destroyed building was $5,000.-00. No objection was made to the court's charge concerning the form or absence of special issues. From the judgment entered on this verdict, the railway company has appealed, assigning five points of error.

■■■ None of the points of error conforms to the dictates of Rule 418, Texas Rules of Civil Procedure, but, since no objection has been made thereto and the points sufficiently direct the court's attention to the errors relied upon, the statements and arguments made under the points will be considered to determine the question of reversible error. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943). Among other errors asserted are the railway company's contentions that the evidence is both legally and factually insufficient to support the findings of the jury; thus, the evidence must be reviewed to determine whether there is any evidence of probative force to support the jury verdict, Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950), and, if so, the evidence as a whole must be considered to determine if the verdict is so against the great weight and preponderance of the evi-

dence as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Hand's land located east of Roaring Springs in Motley County is bisected by the railway company's right-of-way extending downgrade in a general southwesterly to northeasterly direction across the property. At the time material, the right-of-way was overgrown with grass and weeds "from knee high to shoulder high." Some thirteen feet south of the right-of-way was a wood and tin outhouse with some grass and weeds around it. South of the outhouse some 70 feet from the right-of-way was Hand's frame farm building destroyed by the fire. The building, formerly used as a residence, was wired for electricity, but the electrical wire had been disconnected at the meter pole about eight years previous to this time, and the building was used for hay storage, but no hay was in the building at the time of the fire. An activated electric fence was connected to the right-of-way fence north and east of the building. From that point the electric fence extended south on the east side of the building to a point from which it extended in a west or southwesterly direction south of the building to a point; then the course of the fence was south some 25 or 30 feet east of a windmill and tower, located in a mesquite pasture some 250 to 300 feet south and slightly west of the farm building, to and across the south side of an alfalfa field, and thence north on the west side of the alfalfa field to the right-of-way fence west and north of the farm building.

A train eastbound from Floydada to Quanah passed the site of the farm building, located some 26 miles east of Floydada, at 3:15 a. m. and more than eight hours later, between noon and 1:00 p. m., someone reported the building to be engulfed in flames. By the time the Roaring Springs volunteer fire department water truck arrived from a distance of two and one-half miles, the building had been destroyed by fire. Climatological data from the Lubbock Weather Bureau, the nearest

weather reporting station positioned about 55 miles from Hand's property, revealed that at the time the train passed, the wind in the Lubbock area was calm, but at the time the fire was discovered the wind velocity, again in the Lubbock area, had increased to sixteen miles per hour, with gusts, blowing from the west, with a slight variation from the southwest, toward the east-northeast. Sometime between the hours of five and six on the morning of the fire, Hand had checked the electric fence within 50 feet of the farm building and found the fence to be in good condition with no weeds growing under it. Hand did not smell smoke or see any evidence of a fire at that time. The fence was still charged with electricity at the time of the fire.

From Hand and other area residents, testimony was elicited to show that the railway company's trains travelling both east and west emit sparks from the wheels and exhaust systems, that sparks often caused fires on the right-of-way, that from 25 to 30 fires each year were set by trains, that in a ten year period approximately 55 to 65 fires, 17 of them in a single night, were set by the trains, and that fires will smolder in cow chips or fence posts for as long as three or four days before being fanned and spread by the wind. Hand introduced photographs of the area, one of which was of the right-of-way area slightly northwest of his burned building site that depicted bare spots among the vegetation. It was his opinion, based on his experience with railroad right-of-way fires and his inspection of the premises the day after the fire, that the fire started at the bare place shown in the photograph. He opined that the fire smoldered until caught by the wind, burned a narrow path to the top of the dirt dump some 20 feet above the fire's origin and, from the top of the dump, spread south to his property, burning three or four feet on the leeward side of the outhouse, which was not burned, and south to the building that was destroyed by fire. Burned brush piles in the windmill vicinity were explained by Hand

as being the result of his efforts to burn the brush some five years before this occurrence.

Witnesses called by the railway company stated that the train that passed the location of the farm building about eight hours before the fire was discovered was composed of 14 loaded and 14 empty cars drawn by three diesel engines. Each diesel engine was equipped with a dynamic braking system designed to slow the generators and brake the train with this system without the use of mechanical brakes. The train was considered a light load going downgrade. The train conductor, who had operated trains over this track for some 40 years, testified that from his position in the cupola of the caboose he maintained a lookout and the train, equipped with spark arrestors properly working, did not discharge any sparks or fire of any nature on the trip, that the mechanical brakes were not engaged at the time the train passed Hand's property, but the train was slowed by the dynamic braking system which did not produce fire or sparks, that at the regular inspection stop at Roaring Springs five minutes after passing Hand's building, the inspection of the train revealed no train defects of any kind, and that in all his experience as a member of a train crew, he had never known of a single fire being set by an eastbound train going downgrade in this vicinity. The testimony of the train engineer corroborated that of the conductor.

The two members of the volunteer fire department who arrived with the water truck were witnesses. One testified that the wind was blowing from a westerly direction in gusts, that the building was in ashes, that some smoke and smoldering fire were in the brush piles in the vicinity of the windmill, and that grass was burned underneath the electric fence in places. The other fireman testified that a brush fire southeast of the building was extinguished and fires in the mesquite pasture south of the burned building and in the vicinity of the windmill were put out by the

firemen. The railway company's station agent at Roaring Springs, who inspected the area the afternoon following the fire, and one of its attorneys, who made his first inspection two weeks after the fire, testified that the places reflected in Hand's photograph and testified by him as being the origin of the fire had been inspected and were not places where fire had burned, but were bare areas where vegetation did not grow because the soil was rocky and poor. The station agent said that the four brush piles in the vicinity of the windmill showed to be recently burned with fresh dirt thrown on the fires, and a charred area extended from the burned farm building in a northeasterly direction for 175 to 200 feet to the right-of-way. The attorney noted a burned grass area extending northeast from the burned building.

■ No one testified to seeing the passing train emit sparks or fire that ignited the combustible material in the right-of-way; Hand relied upon circumstantial evidence to establish his contention that the fire originated in the railway right-of-way from train sparks. The railway company, citing a line of cases beginning with Gulf, C. & S. F. Ry. Co. v. Meentzen Bros., 52 Tex.Civ.App. 416, 113 S.W. 1000 (1908, no writ), for the proposition that the circumstantial situations necessary to make out a case are "the passage of a train, smoke, or sparks, or both issuing from the engine, the ignition in a short time of the property and its destruction," asserts that Hand failed in his burden of proof in that he only showed the passage of a train eight hours before the destruction of his property. Hand contends, and rightly so, that he is entitled to rely upon circumstantial evidence, and submits that the proper test in this situation is, as enunciated in Louisiana & Arkansas Railway Company v. Littlefield, 407 S.W.2d 16 (Tex.Civ.App.—Texarkana 1966, no writ), that the presence of all factors required in *Meentzen Bros.* is not always essential to the proof of a circumstantial case.

■■ Irrespective of the criteria to be applied to a particular fact situation, every reported Texas case speaking to the subject, including those just mentioned, recognizes and holds that it is necessary for the plaintiff to trace the fire to the railroad. See Texas & P. Ry. Co. v. Brandon, 183 S.W.2d 212 (Tex.Civ.App.—Eastland 1944, writ ref'd) and the cases cited therein. The Littlefield case, citing the *Brandon* rule, states that in discharging the requirement that the fire must be traced to the railroad, it is not necessary that the evidence should exclude all possibility that the fire originated from a source other than the railroad, but the facts and circumstances must fairly warrant a conclusion that the fire did not originate from some other source. It is in the respects of tracing the fire to the railway company and negating the origin of the fire from some source other than the railway company that the evidence, while it is of some probative force to support the verdict, is factually insufficient to support the verdict of the jury.

To support Hand's theory, the evidence must preponderate in favor of the fire's progression from the railway property to his land in a southerly direction at right angle to the direction of a sixteen mile per hour wind and then, in conformity with the physical evidence found by the disinterested firemen, progress southwesterly into the face of the wind. This theory does not comport with either the laws of physics or the physical evidence and runs contrary to common experience. The record evidence is insufficient to explain and justify a conclusion that this fire departed from the course it normally would follow. Consistent with both the laws of physics and common experience is the tendency of fire to follow the direction of the wind and, in this situation, the normal course of the fire would have been in a northeasterly direction from its point of origin. If the fire originated in the right-of-way at the place indicated by Hand, it would, after reaching the top of the dump

and becoming subject to the force of the wind, have burned east-northeasterly along the right-of-way, and away from the burned farm building, in the direction the wind was blowing, but there is no evidence that this area was burned. The evidence of the burned area present south and southwest of the destroyed building and northeast therefrom for 175 to 200 feet to the right-of-way, taken in connection with the sixteen mile per hour wind blowing toward the east-northeast, reasonably mitigates against the conclusion that the fire's origin was traced to the place testified to by Hand, and fails to warrant the conclusion that the fire did not have some other source of origination.

The holding that the verdict of the jury is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust pretermits consideration of the other points of assigned error, including the complaint of the omission of an ultimate issue to support the judgment as opposed to Hand's response that any other required issue was waived.

The judgment of the trial court is reversed and the cause is remanded.